**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 1:25-cr-00383-LLA** |
| **v.** | : | |
| | : | |
| **DANIELLE HILLMER,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS

The United States of America respectfully submits this opposition to defendant Danielle Hillmer's Motion for a Bill of Particulars (ECF No. 18). Defendant's motion should be denied because: (1) the indictment provides ample notice of the charges; (2) the government's voluntary disclosures (Exhibit B) and discovery have already supplied the specific information the defendant claims to need; (3) and the remaining requests improperly seek trial proof, and the defendant's cases do not support the relief she seeks. Taken together, this information provides the defendant with more than enough notice of the allegations against her to conduct her own investigation and prepare for trial.

The defendant frames this case as one in which she confronts nothing but vague accusations—an "entirely unspecified" number of false statements made by "unidentified individuals at unspecified times." Dkt. No. 18-1 at 1–2. That portrait bears no resemblance to the actual charging document and the reality of the parties' interactions over the course of the last 18-plus months. The indictment is a detailed, 53-paragraph charging document that specifies, among much else: that on January 20 and 28, 2021, Hillmer signed service level agreements (SLAs) representing that the Platform "currently maintains enhanced controls to meet the requirements of

an IL5 environment" when she knew that was false (Dkt. No. 1 ¶ 35); that on September 28, 2020, she caused a Significant Change Request to be filed falsely representing that "all FedRAMP High controls were implemented" (Dkt. No. 1 ¶ 33); and that on August 19, September 7, and September 21, 2021, she submitted presentations to Army and DoD officials that she knew "falsely represented that the Platform maintained architectural components and technical capabilities that were neither implemented nor operational" (Dkt. No. 1 ¶ 42). These are not vague generalizations— they are specific acts, on specific dates, involving specific misrepresentations.

Moreover, the indictment, although sufficiently detailed on its own, is far from the only information available to the defendant in her trial preparation. The government met with the defendant and her counsel numerous times before she was indicted sharing detailed information about the evidence it intends to use at trial and its theories of the defendant's criminal culpability. In addition, after receiving defense counsel's February 3, 2026 letter requesting particulars (Exhibit A), the government responded on February 13, 2026 with a twelve-page voluntary disclosure letter (Exhibit B) that, request by request, identified: the names of all key individuals; the specific NIST control families at issue; the manner in which the defendant aided and abetted the scheme; and a paragraph-by-paragraph index of supporting documents with Bates numbers. The government engaged in this good-faith process to address the defendant's requests and any potential uncertainty as to the allegations. The defendant, by contrast, made no attempt to confer with the government after receipt of its letter response and does not appear to have narrowed her requests at all before filing this motion.[1]

---

[1] For example, the defendant's request for the identities of certain key individuals was addressed in the government's letter response and is moot.

What the defendant actually seeks—a statement-by-statement enumeration of every alleged misrepresentation across every document submitted over a 20-month period, with a disclosure for each of who made it, when, to whom, and precisely how it was false—is not a bill of particulars. It is a demand for the government's complete trial proof. Courts in this District have consistently and emphatically rejected such over expansive demands.

The defendant's authorities do not advance her position. She relies heavily on cases that bear no resemblance to the facts and circumstances of this case. For instance, the defendant cites *Anderson* and *Trie*, cases with indictments that failed to identify a single specific false statement or document—the opposite of what the government has done here. Defendant's other cases too are readily distinguishable and therefore do not warrant the extraordinary relief she requests. For all these reasons, defendant's motion should be denied in its entirety.

### LEGAL STANDARD

A bill of particulars serves three limited purposes: to inform the defendant of the charges with sufficient precision to understand them, to prepare for trial, and to support a double jeopardy plea in a subsequent prosecution. *See United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). A bill of particulars clarifies an indictment rather than requiring the government to hand over proof of its case, *United States v. Savoy*, 889 F. Supp. 2d 78, 115 (D.D.C. 2012), and "is not a discovery tool or a device for allowing the defense to preview the government's evidence," *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004). A bill of particulars is unnecessary where, as here, the "indictment is sufficiently specific" on its own or "the requested information is available in some other form." Butler, 822 F.2d at 1193.

**ARGUMENT**

**I.    THE INDICTMENT PROVIDES SUFFICIENT DETAIL TO ENABLE DEFENDANT TO PREPARE HER DEFENSE**

The defendant contends the indictment fails to provide adequate notice because it does not identify "the substance of a single" alleged false statement, explain how each statement was false, identify who made it or when, or distinguish between statements she made personally and those she allegedly caused others to make. Dkt. No. 18-1 at 2–3. That argument misrepresents the record and misapplies the law.

The indictment is a detailed, 53-paragraph, 15-page charging document that identifies not only the categories of false representations and the regulatory framework in which they were made, but a series of specific, individually described false statements and submissions with precise dates:

(1)    On March 10, 2020, Hillmer signed and caused the submission of a Significant Change Request to the JAB representing that FedRAMP High controls would be "implemented by April 2020 and operational by August 31, 2020" — a representation she knew was false because, as of June 2020, more than 100 security controls remained unimplemented. Dkt. No. 1 ¶¶ 28, 30.

(2)    On July 10, 2020, Hillmer approved the submission of a FedRAMP High Readiness Assessment Report to deceive the JAB into approving the High uplift, despite knowing "the system was still being designed and the Platform lacked the resources and technical capabilities to implement the security controls required for FedRAMP High." Dkt. No. 1 ¶ 31.

(3)    On September 28, 2020, Hillmer caused a second Significant Change Request to be submitted to FedRAMP and the JAB falsely representing "that all FedRAMP High controls were implemented." Dkt. No. 1 ¶ 33.

(4)    On January 20 and 28, 2021, Hillmer signed SLAs knowingly making the materially false representation that the Platform "currently maintains enhanced controls to meet the requirements of an IL5 environment" — a specific, verbatim false statement in a signed document submitted to the Army. Dkt. No. 1 ¶ 35.

(5)    On May 18, 2021, Hillmer submitted to the Army via email the Platform's DoD IL5 Security Assessment Plan and DoD FedRAMP+ Readiness Assessment Report, which contained materially false and misleading information regarding the Platform's implementation of security controls at the DoD IL5 level. Dkt. No. 1 ¶ 36.

(6)    On May 26, 2021, Hillmer submitted and caused the submission to the Army via eMASS of the FedRAMP System Security Plan Version 5.0, DoD IL5 Addendum Version 1.0, DoD DISA SRG IL5 Security Assessment Report, and POA&M for May 2021 — four documents, totaling over 900 pages, each containing materially false and misleading information. Dkt. No. 1 ¶ 37.

(7)    On August 19, September 7, and September 21, 2021, Hillmer emailed presentations to assessors, the Army, and DoD officials that she knew "falsely represented that the Platform maintained architectural components and technical capabilities that were neither implemented nor operational, then or at the time they were assessed in 2020." Dkt. No. 1 ¶ 42.

(8)    On June 23, 2021, Hillmer acknowledged in an email to her team that administrators were accessing the Platform without the required multi-factor authentication, and wrote that the company needed a "Hail Mary" to pass the upcoming assessment — an admission of the falsity underlying the representations in the SSPs and other assessment materials she had submitted. Dkt. No. 1 ¶ 38.

(9)    On July 12, 2021, after a demonstration for assessors, Employee 1 wrote in a private chat with Hillmer that "we've dodged the [multi-factor authentication] implementation bullet for now" and "[w]e aren't out of the woods yet." Hillmer replied with a fingers crossed emoji. Dkt. No. 1 ¶ 40.

(10)   In November and December 2020, Hillmer caused FedRAMP assessment and authorization materials to be submitted to the JAB knowing they falsely represented the Platform's architecture, security controls, and risk posture — including falsely representing that customer environments were "managed, monitored, governed, and secured as represented in the Platform's System Security Plan." Dkt. No. 1 ¶ 34.

Against this record, the defendant's claim that she confronts an "entirely unspecified" indictment is not credible. The indictment identifies specific documents by name, version, and date; quotes specific false representations verbatim; identifies the specific security controls falsely described; and includes the defendant's own contemporaneous communications confirming her knowledge of the falsity. That is not a vague charging document. It is a comprehensive one.

This level of specificity far exceeds what the law requires. *See United States v. Saffarinia*, 422 F. Supp. 3d 269 (D.D.C. 2019) (denying motion for bill of particulars where indictment identified categories of false statements, the documents in which they appeared, and their general subject matter), *aff'd*, 101 F.4th 933 (D.C. Cir. 2024). Nor is the government required to catalog

every means by which it will prove the charged crimes. "[N]either the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

The defendant's professed inability to identify the substance of the alleged false statements also rings hollow given her own role. She signed the January 2021 SLAs (Dkt. No. 1 ¶ 35) and approved the November 2020 FedRAMP High uplift package (Dkt. No. 1 ¶ 34). She directed the August and September 2021 presentations (Dkt. No. 1 ¶ 42). She received the warnings from Employee 2 and from outside firm Kratos about unimplemented controls (Dkt. No. 1 ¶¶ 29–30). She wrote the "Hail Mary" email (Dkt. No. 1 ¶ 38) and exchanged the "dodged the bullet" message with Employee 1 (Dkt. No. 1 ¶ 40). She knows—from her own conduct—precisely what representations were made to assessors and government officials regarding the Platform's security posture.

## II.    THE DEFENDANT SEEKS INFORMATION THAT IS "AVAILABLE IN SOME OTHER FORM"

Even if the indictment alone were insufficient—it is not—the information the defendant seeks is "available in some other form" *Butler*, 822 F.2d at 1193, namely, through the government's voluntary disclosures to the defendant and the voluminous, indexed discovery provided to the defendant.

### A.    *The Government Voluntarily Provided Extensive Additional Details to the Defendant*

The defendant's motion is particularly unfounded given the level of information the government has shared with her and her legal team both pre- and post-indictment. The government and the defendant, through her counsel, had an open dialogue for over a year prior to her indictment

during which the government was very transparent about its theories of the defendant's culpability and the key evidence incriminating her. First, the government provided a lengthy and detailed reverse proffer to the defendant and her attorneys. During this proffer, the government highlighted numerous key documents and clearly laid out its theory of the defendant's criminal liability. But that is not all. The government also held multiple calls with the defendant's counsel during which it walked defense counsel through evidence, answered their questions, and explained the government's theory of the case. The government then held yet another reverse proffer with the defendant and her counsel that served as a "show-and-tell" and question and answer session. In light of this history, the defendant's claimed lack of notice and inability to prepare a defense rings particularly hollow. The government's willingness to meet with the defendant on multiple occasions and share detailed information regarding its evidence and legal theories is a factor multiple other courts in this district have found obviates the need for a bill of particulars. *See Saffarinia*, 422 F. Supp. 3d at 276 (rejecting argument that government needed to provide in a bill of particulars that which it had already provided in multiple reverse proffer sessions with defendant and his counsel); *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 147–48 (D.D.C. 2015) (denying motion for bill of particulars where there were reverse proffers and the government provided voluminous discovery to defendants).

But that is not the only additional information available to the defendant. In early February, the defendant sent a letter to the government requesting 40 categories of additional information. Ex. A. The government responded within ten days with a twelve-page letter that addressed each request in turn, eliminating any cognizable gap in the defendant's understanding of the charges. The Defendant's decision to still seek a bill of particulars in the face of such particularized allegations and information reveals her true motive—to preview the government's trial evidence.

### 1.    Identities of Key Individuals

The defendant contends she has "no way of identifying" the individuals referenced in the indictment. Dkt. No. 18-1 at 19. The government's February 13 letter (Ex. B) identified all of them: Company A is Accenture Federal Services; Employee 1 is Michael Craig (who pleaded guilty to obstruction of a federal audit on December 4, 2025); Employee 2 is Christopher Wright; the 3PAO is Coalfire Systems; the lead assessor is Taimur Masood; the outside firm is Kratos; and the Army representative is David LaPradd, among others. Ex. B at 9. This claim was moot before the defendant filed her motion.

### 2.    Specific False Representations and Documents

The defendant argues the government must identify every misrepresentation with speaker, date, content, and mechanism of falsity—separately for written statements, oral statements, artifacts, and concealment. Dkt. No. 18-1 at 7–16. This argument is not supported by the law. *See, e.g.*, *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006) (rejecting request that government provide in a bill of particulars "date, time, and place of each false statement or concealment and the persons involved"). In any event, the government's February 13 letter (Exhibit B) addressed all four categories.

The letter disclosed that the false representations relate to the implementation of controls in five NIST SP 800-53 control families: (a) identification and authentication (IA), including enterprise deployment of hardware-token multi-factor authentication (Yubikeys); (b) access control (AC), including automated account provisioning and privilege management via SCALR and Terraform; (c) audit and accountability (AU), including centralized log collection and aggregation via ELK; (d) system and information integrity (SI), including continuous monitoring and real-time alerting; and (e) incident response (IR). Ex. B at 3.

The letter further explained that these representations were false because the Platform had not implemented the described security controls—as the defendant knew from the April–May 2020 warnings from Employee 2 (identifying access controls as "serious auditor red flags" (Dkt. No. 1 ¶ 29)); the May 29, 2020 warning from Kratos about "outstanding pieces associated with the ILS controls/parameters that haven't been fully resolved" (Ex. B at 3); and the June 2, 2020 spreadsheet from Kratos identifying more than 100 unimplemented security controls (Dkt. No. 1 ¶ 30). All of this was known to the defendant before she signed the January 2021 SLAs and before she approved the November 2020 assessment package. Moreover, given the extensive and open pre-indictment dialogue between the defendant and the government, the defendant was well aware that these specific false representations were the focus of the government's case against her.

The defendant contends this is still insufficient because Version 5.0 of the FedRAMP High SSP mentions Yubikeys in the context of 16 controls, SCALR in the context of 26 controls, and ELK in the context of 26 controls across multiple families, leaving her to guess which specific references are at issue. Dkt. No. 18-1 at 10–11. But the government is not required to annotate its trial exhibits line by line before trial. It has identified the control families, the documents, and the reason the representations were false—namely, that *all of the identified controls* were falsely described as "fully implemented" when the defendant knew they were not. That is more than the law requires.

### 3.    Manner of Aiding and Abetting

The defendant contends the indictment is constitutionally deficient because it does not explain how she "caused" or "aided and abetted" the making of false representations. Dkt. No. 18-1 at 16–18. However, the government's February 13 letter (Ex. B) *did* identify the manner in which it intends to prove the aiding-and-abetting theory: (a) directing subordinates to read from prepared

scripts, avoid assessors' questions, and cease screen-sharing during demonstrations; (b) participating in and monitoring demonstrations during which false representations were made; (c) directing the preparation and transmittal of system security plans and presentations containing information the defendant knew was inaccurate; (d) requiring that all decisions be vetted through her; and (e) failing to report known issues to FedRAMP. Ex. B at 8–9.

The government was not required to provide this information but did so in a good-faith attempt to assist the defendant. *See United States v. Pollack*, 534 F.2d 964, 970–71 (D.C. Cir. 1976) (finding "[defendant's] complaint that he was not identified as a principal, aider, or abettor in the indictment . . . frivolous"). Indeed, the government need not even plead aiding and abetting in an indictment in order to rely on it as a theory of conviction. *United States v. Kegler*, 724 F.2d 190, 200–201 (D.C. Cir. 1983) ("The indictment need not specifically charge a violation of 18 U.S.C. § 2."). As the D.C. Circuit has explained, 18 U.S.C. § 2 is not "an independent crime," but rather provides an alternative means of establishing liability under other criminal statutes. *Id*. Accordingly, "[a]n individual may be indicted as a principal . . . and convicted by proof showing him to be an aider or abettor," and "[a]n aiding and abetting instruction may be given" even where "the indictment does not allege violation of the aiding and abetting statute." *Id.* at 201. The defendant's demand for particulars as to the government's theory and evidence of her acts of aiding and abetting therefore fails as a matter of law.

### 4.     Paragraph-by-Paragraph Index of Key Documents

The government also provided a paragraph-by-paragraph index of key documents supporting the indictment, with Bates numbers. Ex. B at 11–12. This index identified: the three NIFMS task orders; both Significant Change Requests; FedRAMP High SSP Versions 4.0 and 5.0; the DoD IL5 Addendum; the FedRAMP High Readiness Assessment Report; the Coalfire

assessment materials; the defendant's approval email for the FedRAMP High uplift package; both SLAs signed by the defendant; the emails transmitting the IL5 Security Assessment Plan and Readiness Assessment Report; the email confirming eMASS submission; the defendant's June 23, 2021 "Hail Mary" email; the internal chats from the July 12, 2021 demonstration; and all three Architecture Briefing presentations from August and September 2021. The defendant knows exactly which documents the government contends are false and where to find them in the production.

### B.    The Government's Voluminous Discovery Further Diminishes Any Need for a Bill of Particulars

The defendant characterizes the government's production of "over 15 million pages and 1.765 terabytes of data" as evidence that a bill of particulars is more necessary, arguing that voluminous discovery "can have the deleterious effect of making it harder for Defendants to prepare for trial." Dkt. No. 18-1 at 20 (quoting *Khalil*). The law is the opposite. Under *Butler*, a bill of particulars is unnecessary where the requested information is "available in some other form"—including through discovery. 822 F.2d at 1193. The production of substantial discovery is a factor that weighs *against*, not in favor of, ordering a bill of particulars. *Safavian*, 429 F. Supp. 2d at 161.

More importantly, this is not a case where the defendant is left to sift through an undifferentiated mass of millions of pages to guess which documents are at issue. The government has done that work for her. The February 13 letter (Ex. B) provided a paragraph-by-paragraph index of key documents supporting each indictment allegation, complete with Bates numbers. The defendant not only knows which documents the government contends are false—she knows exactly where to find them in the production. The premise of the voluminous-discovery argument simply does not hold on this record.

11

The defendant quotes *Trie* for the proposition that discovery "is no substitute for adequate specification of crimes with which [the defendant] is charged." Dkt. No. 18-1 at 20 (quoting 21 F. Supp. 2d at 21 n.12). The government does not contend that discovery substitutes for an adequate indictment. The opposite is true. Not only is the indictment sufficiently detailed and particularized, the government has provided another 12 pages of specific, detailed information and an index of supporting documents to further aid the defendant's own investigation and preparation for trial.

III.    **THE DEFENDANT'S REQUESTS IMPROPERLY SEEK THE GOVERNMENT'S TRIAL PROOF, AND HER CASE AUTHORITIES DO NOT SUPPORT RELIEF**

What the defendant is actually seeking—a statement-by-statement catalogue of every alleged misrepresentation across every document and demonstration spanning 20 months, with the identity of every speaker, the date and time of every statement, and a detailed explanation of how each statement was false—is not a bill of particulars. It is a demand for a complete preview of the government's trial proof. The law does not permit that.

A.    *The Government Is Not Required to Enumerate Every Individual False Statement*

The defendant's core legal argument is that the indictment must specify—statement by statement—the content, speaker, date, and mechanism of falsity for every alleged misrepresentation. Dkt. No. 18-1 at 7–12. The D.C. Circuit has squarely rejected that standard. In *Haldeman*, the D.C. Circuit emphasized that the Federal Rules "were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure" and held neither the Constitution nor the Federal Rules of Criminal Procedure "suggest[] that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." 559 F.2d at 124. Consistent with *Haldeman*, "'[i]t is not the function of a bill of particulars to provide detailed disclosure of the government's evidence in

advance of trial." *Brodie*, 326 F. Supp. 2d at 91 (quoting Overton v. United States, 403 F.2d 444, 446 (5th Cir. 1968)). "Nor is the purpose of a bill of particulars to provide for whole sale discovery of the Government's evidence." *Id.* (internal quotations omitted); *see also United States v. Mejia*, 448 F.3d 436, 446 (D.C. Cir. 2006) (affirming district court's denial of motion for bill of particulars even where "indictment did not itself detail the drug trafficking activities about which the cooperating witnesses testified, [but] the DEA–6s recounting those witnesses' pretrial statements did"); *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 177 (D.D.C. 2015) (collecting cases denying requests for bill of particulars).

The defendant attempts to neutralize these authorities by arguing that *Lorenzana-Cordon* and *Mejia* are drug cases in which bare-bones indictments suffice, and are therefore inapplicable to complex fraud charges. Dkt. No. 18-1 at 12 n.3. This argument misreads both cases and ignores controlling authority. While those cases happen to involve drug conspiracies, they state general principles about the purpose and limits of bills of particulars that courts in this District routinely apply across all criminal case types.

In any event, other courts within this district have denied requests for a bill of particulars in circumstances strikingly similar to those present here. In *Saffarinia*, the defendant was charged with concealment and false statements under 18 U.S.C. § 1001 and obstruction under 18 U.S.C. § 1519 in connection with his failure to disclose conflicts of interest in annual reporting forms. 422 F. Supp. 3d at 271–273. The *Saffarinia* indictment alleged false statements regarding specific meetings with a contractor and whether certain payments were authorized—subject-matter categories, not statement-by-statement inventories. Contrary to the defendant's assertions, the indictment in this case is in fact far *more specific* than that in *Saffarinia*: it quotes verbatim the false representation in the January 2021 SLAs that the Platform "currently maintains enhanced

13

controls to meet the requirements of an IL5 environment" (Dkt. No. 1 ¶ 35); it quotes the September 2020 SCR's false claim that "all FedRAMP High controls were implemented" (Dkt. No. 1 ¶ 33); and it identifies the August and September 2021 presentations as falsely representing "architectural components and technical capabilities that were neither implemented nor operational" (Dkt. No. 142). That is more than *Saffarinia* required, not less.

The defendant also invokes *Will v. United States*, 389 U.S. 90, 99 (1967), and *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012). Dkt. No. 18-1 at 7. Neither helps her. *Will*'s broad discretion standard cuts both ways—the same discretion that permits a bill of particulars also permits denial when, as here, the indictment is specific and the government has supplied additional disclosures. Similarly, *Sanford*'s observation that a bill of particulars limits and defines the government's case does not mean one is required here; the precondition for granting one is an indictment so vague the defendant cannot understand the charges—a threshold this indictment does not approach.

The defendant also seeks a catalogue of every false or misleading statement the government may introduce at trial, including statements beyond those specifically charged in the indictment. Dkt. No. 18-1 at 14. That request is premised on a fundamental misunderstanding of the government's obligations. In a fraud prosecution based on a multi-year scheme, the government may introduce evidence of false statements, misleading conduct, and other scheme evidence beyond the specific acts alleged in the indictment where such evidence is probative of the defendant's knowledge, intent, and the scope of the charged scheme. A bill of particulars is not a mechanism for locking the government into a finite list of statements before trial or for previewing the government's scheme evidence. *Saffarinia*, 422 F. Supp. 3d at 276 (D.D.C. 2019) ("A bill of particulars is meant to allow [a defendant] to properly prepare for trial, not provide a method to

force the prosecution to connect every dot in its case." (quoting *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017)).

### B.    Defendant's Lead Cases — Anderson and Trie — Are Distinguishable

The defendant relies most heavily on *United States v. Anderson*, 441 F. Supp. 2d 15 (D.D.C. 2006), and *United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998). Dkt. No. 18-1 at 8–9. Both are readily and materially distinguishable from this case.

*Anderson* involved an 11-count tax-fraud indictment that vaguely alleged the defendant "lied to his accountants" and submitted false information in tax returns across several years—without identifying a single specific false statement, any document in which a false statement appeared, or any mechanism by which the statements were false. 441 F. Supp. 2d at 16. The court ordered a bill of particulars because the defendant faced an undifferentiated mass of years of tax returns without any indication of what, specifically, was alleged to be false. *Id.* at 20.

*Anderson* accordingly establishes the floor: an indictment must, at minimum, identify which documents are alleged to contain false statements. This indictment does not merely clear that bar—it exceeds it decisively. The indictment here not only names the specific documents (nine of them, by title, version, and date) but also quotes specific false representations within those documents. Dkt No. 1 ¶¶ 28, 33, 35, and 42.

The defendant attempts to equate herself with the *Anderson* defendant by arguing that even knowing a document contains false representations does not tell her which specific statements within each document are false. Dkt. No. 18-1 at 10–11. But *Anderson* held that the government must identify which documents are alleged to be false—not that it must annotate each sentence as false or true. The D.C. Circuit and district courts have repeatedly held that the government is not required to go further. *See Butler*, 822 F.2d at 1193; *Saffarinia*, 422 F. Supp. 3d at 277–80.

*Trie* is even more inapposite. That case involved what the court characterized as "particularly enigmatic" false statement charges, 21 F. Supp. 2d at 21, and was described by the *Anderson* court as "unique" due to the particularly "convoluted" nature of the indictment, *Anderson*, 441 F. Supp. at 19. Like *Anderson*, the *Trie* indictment identified not a single specific document or false statement. 21 F. Supp. 2d at 21. And, unlike this case, the defendant in *Trie* was charged with false statements under 18 U.S.C. § 1001, and it was those specific statements that the court required be provided in a bill of particulars. *Id.* Here, the indictment not only identifies specific documents but quotes specific false representations by name: the SLA's "currently maintains enhanced controls" language, the SCR's "all FedRAMP High controls were implemented" claim, and the presentations' false architectural diagrams. The charges here are anything but enigmatic.

The defendant also cites *United States v. Boone*, 2025 WL 3530078, at *14–15 (M.D. Pa. Dec. 9, 2025), for the proposition that a bill of particulars is warranted where a major fraud case involves "thousands of representations." Dkt. No. 18-1 at 9. *Boone* is non-binding authority from another circuit, and the defendant has not described its discovery record. *Boone* did not involve an indictment that quoted specific false representations verbatim, named specific documents by version and date, and was supplemented by a twelve-page voluntary disclosure letter with a Bates-indexed document guide. The premise of *Boone*—**that the defendant genuinely cannot identify the relevant records**—does not apply here.

The defendant marshals additional cases to support her requests regarding written misrepresentations and artifacts, oral misrepresentations, aiding and abetting, and concealment. Those cases bear little resemblance to the instant case and do not support the relief she seeks. Here, the government has done precisely that which was lacking in those cases. The government

has identified specific documents, specific dates, specific portals, and has quoted specific false representations verbatim. *Cf. United States v. Bortnovsky*, 820 F.2d 572, 574–75 (2d Cir. 1987); *United States v. Holmes*, 2020 WL 666563, at *9 (N.D. Cal. Feb. 11, 2020). The government has specifically alleged how the defendant caused and aided the alleged fraud—signing certain documents (Dkt. No. 1 ¶ 35), submitting specific documents (Dkt. No. 1 ¶ 37), approving other documents (Dkt. No. 1 ¶ 34), and directing her subordinates to mislead assessors (Dkt. No. 1 ¶ 40).

### C.       *Defendant Is Not Entitled to the Identity of Every Individual Involved*

The defendant seeks the identity of all "others known to the Grand Jury" who participated in the scheme as well as the individual assessor, authorizing official, government customer, and outside consultant. Dkt. No. 18-1 at 18–19. The government has already provided the identities of the individuals and entities referenced in the indictment. Ex. B at 9. Moreover, the defendant supervised Craig and Wright. She engaged Kratos. She directed the work of the team whose members participated in the assessments. Her argument that she cannot identify who participated without a court order is outrageous. For avoidance of any doubt, the government directed the defendant to particular documents supporting the indictment, paragraph-by-paragraph, allowing her to refresh her memory as to the individual assessors, authorizing officials, and customers who she misled over the course of at least two years.

Additionally, since the defendant was indicted, the government has produced more than 30 interview reports in discovery, indexed for the defendant's review—well before it was obligated to do so—substantially previewing the government's potential witnesses and their anticipated testimony. The defendant therefore does not have to "guess" at what she is facing at trial. These materials more than adequately allow the defendant to prepare for trial. *See, e.g.*, *Butler*, 822 F.2d

at 1193 (affirming denial of bill of particulars because "requested information [wa]s available in some other form").

### D.     Defendant's Concealment Requests Seek Evidentiary Detail the Law Does Not Require

The defendant asks the Court to compel the government to identify, for each alleged act of concealment: what information was concealed, how it was concealed, from whom, who concealed it, and when. Dkt. No. 18-1 at 14–16. This is yet another demand for the government's trial proof.

The indictment identifies the nature of the concealment with specificity. The defendant concealed known deficiencies in security controls by submitting false assessment and authorization materials and failing to correct known misrepresentations. Dkt. No. 1 ¶¶ 23–25, 32, 34, 38–40. The indictment goes further, providing concrete examples of both the deficiencies that were concealed and the defendant's knowledge of them. For example: Hillmer acknowledged in her June 23, 2021 email that administrators were accessing the Platform without the required multi-factor authentication, and then wrote that she needed a "Hail Mary" to pass the upcoming assessment—an explicit acknowledgment that the Platform did not in fact maintain the MFA controls claimed by Hillmer and others. *Id.* ¶ 38. And on July 12, 2021, following a virtual demonstration for assessors, Employee 1 confirmed they had "dodged the [MFA] implementation bullet for now" while Hillmer replied with a fingers crossed emoji—further confirming her knowledge that the concealment was ongoing and that discovery by assessors remained a risk. *Id.* ¶ 40. The defendant is not left to speculate about what was concealed: these are specific deficiencies, described in specific communications, by the defendant herself.

The defendant's reliance on *United States v. Stern*, 2003 WL 22743897 (S.D.N.Y. Nov. 20, 2003), Dkt. No. 18-1 at 14–15, is misplaced. In *Stern*, the indictment charged concealment of "wrongful conduct" without any specification of what conduct was being concealed—leaving the

18

defendant to speculate whether the government had some entirely separate wrongful conduct in mind. 2003 WL 22743897, at *3–4. Here, the specific deficiencies concealed are identified by name—multi-factor authentication via Yubikeys, automated account management via SCALR, and centralized logging via the ELK stack—and the defendant's own internal communications confirm her contemporaneous knowledge of each deficiency. The government's February 13 letter (Ex. B) further described her specific instructions to subordinates to conceal these deficiencies.

## CONCLUSION

A bill of particulars serves a narrow purpose: to cure an indictment so vague that the defendant cannot understand the charges. This indictment does not come close to that threshold. It quotes specific false representations verbatim, it identifies specific documents by name, version, and date; the security controls falsely described; the portals through which false information was transmitted; the dates of the charged wire transmissions; and the defendant's own words confirming her knowledge of the Platform's deficiencies. Furthermore, the government has voluntarily provided additional, detailed information to the defendant, both pre- and post-indictment, regarding its evidence and how it intends to use that evidence to establish her guilt. And the government has further supplemented the indictment by identifying every key individual by name, describing the aiding-and-abetting theory with specificity, and providing a Bates-indexed document guide keyed to each indictment paragraph. Finally, the defendant has extensive, well-organized and indexed discovery available to her to conduct her own investigation and preparation for trial. Under these circumstances, the defendant can neither demonstrate surprise nor an inability to prepare for trial. For all these reasons, the defendant's motion for a bill of particulars should be denied in its entirety.

Respectfully submitted,

LORINDA I. LARYEA
Chief, Fraud Section
Criminal Division
United States Department of Justice

By:    /s/ *Andrew Jaco*
       Lauren Archer (D.C. Bar No. 90017414)
       Andrew Jaco (D.C. Bar No. 1029334)
       Paul Hayden
       Trial Attorneys
       1400 New York Avenue, N.W.
       Bond Building, Fourth Floor
       Washington, D.C. 20530
       Lauren.Archer2@usdoj.gov
       Andrew.J.Jaco@usdoj.gov
       Paul.Hayden@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 13, 2026, I electronically filed the foregoing with

the Clerk of the Court using CM/ECF.


*s/Andrew Jaco*
J. Andrew Jaco
Trial Attorney

1