# EXHIBIT B



**U.S. Department of Justice**
Criminal Division

---

*Fraud Section*                                        *Washington, D.C. 20530*


February 13, 2026


**VIA E-MAIL**

Charles F. Connolly
Gerald M. Moody, Jr.
Allison T. Coffin
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006


Re:   *United States v. Danielle Hillmer*, No. 1:25-cr-383-LLA (D.D.C.)
        Government's Response to Defendant's Request for Bill of Particulars


Dear Counsel:

We write in response to your letter of February 3, 2026, requesting a bill of particulars on behalf of defendant Danielle Hillmer pursuant to the Sixth Amendment and Federal Rule of Criminal Procedure 7(f). For the reasons set forth below, the government respectfully declines to provide the requested bill of particulars. The 53-paragraph, 15-page indictment provides Ms. Hillmer with more than sufficient notice of the charges against her to prepare a defense and avoid unfair surprise at trial. Moreover, the extensive discovery the government has produced and will continue to produce—including the very documents and communications referenced in the indictment— provides the defendant with the specific details she seeks.

Nevertheless, in the interest of narrowing any disputes and facilitating efficient pretrial preparation, the government voluntarily provides certain additional information, including an index of key documents supporting the indictment's allegations, organized by indictment paragraph. These voluntary disclosures are offered without waiver of the government's position that the indictment is sufficient as returned and without waiver of the government's right to present additional arguments and proof at trial.

## I.      Legal Standard

A bill of particulars is intended to inform the defendant of the charges with sufficient precision to prepare for trial, minimize surprise, and support a double jeopardy plea in a subsequent prosecution. *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). It is *not* a discovery device and may not be used to compel the government to disclose the manner in which it will prove its case or preview its evidence and legal theories. *See United States v. Lorenzana-Cordon*,

130 F. Supp. 3d 172, 177 (D.D.C. 2015) (defendants not entitled to bill of particulars disclosing overt acts or names of co-conspirators); *U.S. v. Poindexter*, 725 F. Supp. 13 (D.D.C. 1989). The decision to grant a bill of particulars lies within the sound discretion of the trial court and is appropriate only where the indictment is so vague that the defendant cannot prepare a defense. *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006); *United States v. Rankin*, 870 F.2d 109, 112 (D.C. Cir. 1989). Moreover, the need for a bill of particulars is significantly diminished where the government has produced extensive discovery, as it has here. *See United States v. Safavian*, 429 F. Supp. 2d 156, 161 (D.D.C. 2006) (holding the production of substantial amounts of discovery is a relevant consideration in evaluating whether to order a bill of particulars).

## II.    The Indictment Provides Sufficient Detail

The indictment is a detailed, 53-paragraph charging document that identifies:

- The defendant's role, responsibilities, and supervisory authority over the Platform (¶¶ 2, 5);

- The relevant employees and their relationships to the defendant (¶¶ 3–4);

- The FedRAMP and DoD authorization frameworks (¶¶ 6–16); the Army NIFMS contract at issue and its value (¶¶ 17–18);

- The purpose, manner, and means of the scheme to defraud (¶¶ 19–27);

- Specific acts with dates and descriptions of Significant Change Requests, assessment submissions, service level agreements, emails, and presentations (¶¶ 28–43);

- the defendant's own words from internal communications (¶¶ 38, 40, 41);

- Specific categories of security controls at issue, including access control, incident response, continuous monitoring, auditing, logging, and alerting (¶¶ 23, 29, 30, 38);

- Specific systems and portals through which false information was transmitted, including MAX and eMASS (¶¶ 25, 37); and

- The dates and descriptions of the charged wire transmissions (¶ 46).

This level of detail far exceeds what is required under the Federal Rules and the Sixth Amendment. Moreover, the defendant's assertion that she cannot prepare a defense without knowing the precise content of each alleged false statement is belied by the nature of the charges. As the individual responsible for oversight of assessments, authorizations, and continuous monitoring of the Platform (¶ 2), the defendant is well aware of the representations she and her team made to assessors and the government regarding the Platform's security posture. Moreover, she signed or caused the submission of the very documents at issue—including the Significant Change Requests (¶¶ 28, 33), the service level agreements (¶ 35), and assessment and authorization materials (¶¶ 34, 37)—and she made oral representations to the Army and DoD officials on identified dates (¶ 42).

### III.    The Defendant's Requests Seek Improper Discovery

Many of the 40 requests in your letter seek evidentiary detail far beyond what is necessary to understand the charges. Requests asking the government to identify each false representation, its content, the date and time it was made, to whom it was made, and how it was false, amount to a demand for a comprehensive preview of the government's proof, which is precisely what courts in this District have rejected. *See Lorenzana-Cordon*, 130 F. Supp. 3d at 177; *Mejia*, 448 F.3d at 445. Similarly, the request to enumerate each of the "more than 100 security controls" that were not implemented (Request 6) and the requests to identify every act of concealment with a date and time (Requests 29–36) improperly seek to compel the government to catalog its trial evidence.

### IV.    Voluntary Disclosures

Although the government believes the indictment and discovery are more than sufficient, in the interest of narrowing any disputes and facilitating efficient pretrial preparation, the government is willing to make certain voluntary disclosures.

#### A.  False and Misleading Representations (Requests 1-17)

The false representations charged in the indictment relate to, among others things, the implementation of controls in the following NIST SP 800-53 control families: (a) identification and authentication (IA), including enterprise deployment of hardware-token multi-factor authentication (Yubikeys); (b) access control (AC), including automated account provisioning and privilege management; (c) audit and accountability (AU), including centralized log collection and aggregation; (d) system and information integrity (SI), including continuous monitoring and real-time alerting; and (e) incident response (IR). The government is not required to enumerate each individual falsity in a bill of particulars, as this would compel disclosure of the government's trial proof. *See United States v. Saffarinia*, 422 F. Supp. 3d 269,  (D.D.C. 2019) (denying motion for bill of particulars in case involving obstruction and false statements).

**Request 1** (Indictment ¶¶ 22–23, 29)

- On or about March 10, 2020, the defendant signed and caused to be submitted via OMB MAX a FedRAMP Significant Change Request to the Joint Authorization Board seeking approval to uplift the Platform from FedRAMP Moderate to High. The Significant Change Request stated that the change was necessary because awarded contracts—specifically, the Army NIFMS contract—required FedRAMP High and that the authorization to operate for NIFMS was contingent on achieving FedRAMP High. The defendant represented that the majority of High controls were "pending implementation" and would be implemented in April 2020, and that changes needed to be operational by August 31, 2020.

- Warnings that the Platform was not ready for the uplift were received from multiple individuals, including but not limited to: (a) Christopher Wright, who, between on or about April 29 and May 22, 2020, maintained and updated a "risk tracker" on SharePoint that listed FedRAMP Moderate, High, and DoD IL5 controls that were not implemented, along with plans to implement them, if any, and implications if they were not completed prior to the assessment, and who emailed the defendant about "several open risks that carry very real and serious security implications to the platform"; (b) Kratos, an outside consultant

engaged by the defendant to prepare system security plans, who, on or about May 29, 2020, warned the defendant and others that there were "outstanding pieces associated with the IL5 controls/parameters that haven't been fully resolved," including controls that were "not currently implemented" and controls for which "there's not even enough information to write to because the solution hasn't been determined yet," and who, on or about June 2, 2020, provided the defendant a spreadsheet identifying more than 100 security controls and DoD general readiness requirements were not implemented. These and other warnings are contained in the discovery produced to the defendant.

**Request 2** (Indictment ¶ 23)

- The false and misleading representations regarding the Platform's system architecture and implementation of security controls that the defendant made to assessors and authorizing officials include, but are not limited to, representations contained in: (a) FedRAMP High System Security Plans (Versions 4.0, 5.0, and 6.0), which falsely described security controls—including multi-factor authentication (Yubikeys), automated account management (SCALR), continuous monitoring (auditing, logging, monitoring, and alerting via ELK stack), and incident response capabilities—as "fully implemented" when the defendant knew they were not; (b) DoD IL5 Addendum, which contained corresponding false representations; (c) Security Assessment Reports and Readiness Assessment Reports, which the defendant reviewed, edited, and/or approved before submission to the JAB via OMB MAX and to the Army via eMASS; and (d) oral representations made during virtual demonstrations with assessors between approximately June 2020 and September 2021, during which the defendant and her subordinates falsely represented that security controls were fully implemented and operational. These representations were false because the Platform had not implemented the security controls described, as the defendant knew from internal communications and warnings described in response to Request 1, among others.

**Request 3** (Indictment ¶ 24)

- The government incorporates its response to Requests 1 and 2, above. The false representations regarding the implementation of security controls that the defendant aided and abetted include representations contained in system security plans and related materials, including assessment artifacts submitted to the 3PAO during the 2020 and 2021 assessments. These artifacts falsely represented the implementation of, among other things: (a) audit and accountability controls (AU family), including log collection and aggregation in ELK; (b) access control protections (AC family), including automated account provisioning via SCALR and Terraform; (c) identification and authentication controls (IA family), including enterprise deployment of Yubikeys for multi-factor authentication; and (d) system and information integrity controls (SI family), including monitoring and alerting capabilities. These representations were made to assessors from the 3PAO between approximately June 2020 and September 2021. The defendant instructed subordinates to conceal deficiencies by, among other things, reading from prepared scripts, avoiding assessors' questions, and ceasing screen-sharing during demonstrations. The representations were false for the reasons described in response to Requests 1 and 2, above.

**Request 4** (Indictment ¶ 25)

- The false and misleading information the defendant submitted or caused to be submitted regarding the Platform's architecture, implementation of security controls, and overall security posture is described in the government's responses to Requests 2 and 3. This information was submitted to assessors and to the JAB and government customers via OMB MAX. The information was false for the reasons stated above.

**Request 5** (Indictment ¶ 26)

- The false and misleading representations the defendant made and caused to be made to the Army regarding the Platform's architecture, technical capabilities, and compliance with DoD IL4 requirements include, but are not limited to: (a) representations in the January 20 and 28, 2021 service level agreements that the Platform "currently maintains enhanced controls to meet the requirements of an IL5 environment pending their final approval for a FedRAMP High Baseline"; (b) on or about May 4 and May 6, 2021, oral and written representations to an Army representative that the Platform maintained security controls at IL5, in order to induce the Army to sponsor the Platform's DoD provisional authorization; (c) a written submission to the Army and DISA on or about May 6, 2021, representing that "the AIP system is currently being maintained at the IL5 throughout the entire approval process"; (d) submissions to the Army via eMASS on or about May 26, 2021, including the FedRAMP System Security Plan and DoD IL5 Addendum; and (e) presentations to the Army and DoD officials on or about August 19, September 7, and September 21, 2021, which falsely represented the Platform's architecture using diagrams that reflected the posture "that was assessed" in 2020 rather than the current posture, as the defendant directed. These representations were false because the Platform did not maintain the requirements of an IL5 environment, as the defendant knew.

**Request 6** (Indictment ¶ 30)

- The "more than 100 security controls and DoD general readiness requirements" that were not implemented were identified by Kratos. The specific controls and requirements are documented in the firm's communications and work product, which have been produced in discovery.

**Requests 7-8** (Indictment ¶ 35)

- The government incorporates its response to Request 5, above. The false representations in the January 20 and 28, 2021 SLAs include, but are not limited to, the representation that the Platform "currently maintains enhanced controls to meet the requirements of an IL5 environment pending their final approval for a FedRAMP High Baseline." This representation was made to the Army through the SLAs signed by the defendant, which defendant knew were required by and would be provided to the Army via eMass. This representation was false because, at the time the defendant signed the SLAs, she knew that the FedRAMP High SSP and DoD IL5 Addendum were not accurate and that the Platform did not maintain the security controls described therein, including controls related to multi-factor authentication, automated account management, continuous monitoring, and incident response. The use of "including" in the indictment reflects that additional false representations beyond those specifically quoted are contained in the SLAs, which have been produced in discovery. Where the government has specifically identified with specificity the documents that it alleges were false and misleading, the government is not

required to enumerate every individual false statement in every document in a bill of particulars.

**Request 9** (Indictment ¶ 36)

- On or about May 18, 2021, the defendant submitted to the Army via e-mail the Platform's DoD IL5 Security Assessment Plan and DoD FedRAMP+ Readiness Assessment Report. These documents contained false and misleading information regarding the Platform's implementation of security controls at the DoD IL5 level, including representations that security controls described in the government's responses to Requests 2, 3, and 8 were fully implemented and operational, when the defendant knew they were not. The specific false representations within these documents are contained in the discovery materials produced to the defendant.

**Request 10** (Indictment ¶ 37)

- On or about May 26, 2021, the defendant submitted and caused to be submitted to the Army via eMASS the following documents, each of which contained false and misleading information: (a) the Platform's FedRAMP System Security Plan Version 5.0, dated January 29, 2021, which falsely described security controls as "fully implemented" as set forth in the government's responses to Requests 2 and 3; (b) the DoD IL5 Addendum Version 1.0, dated June 12, 2020, which falsely represented the Platform's compliance with DoD IL5 requirements; (c) the DoD DISA SRG IL5 Security Assessment Report, Version 1.0, dated November 11, 2020, which contained assessment findings based on false representations and fraudulent artifacts submitted during the 2020 assessment; and (d) the POA&M for May 2021, which failed to identify known deficiencies in security controls. Each document was false for the reasons set forth in the government's responses above, and each has been produced in discovery.

**Request 11** (Indictment ¶ 42)

- On or about August 19, September 7, and September 21, 2021, the defendant made false and misleading representations to Army and DoD officials in meetings and written submissions as part of the process to obtain a DoD provisional authorization. The representations concerned the Platform's architecture and implementation of security controls. Specifically, the defendant e-mailed presentations to assessors, the Army, and DoD officials that falsely represented the Platform's architecture using diagrams reflecting the posture as described in the 2020 FedRAMP High SSP and DoD IL5 Addendum—the posture "that was assessed"—rather than the Platform's current posture, as the defendant directed her subordinates. The defendant knew the Platform's architecture had not maintained the components represented in those diagrams, including SCALR and other technologies that were not functional or operational. The recipients of these presentations included representatives of the Army and DISA involved in the DoD authorization process.

**Request 12** (Indictment ¶¶ 45–46)

- Count One charges that, on or about December 9, 2020, the defendant caused to be transmitted by wire the submission of FedRAMP assessment and authorization materials to the JAB via OMB MAX. The materially false and fraudulent pretenses, representations, and promises contained in those materials include the false representations described in the

government's responses to Requests 2 through 4, above, as incorporated in the FedRAMP High and Moderate assessment and authorization packages that the defendant reviewed and approved on or about November 6 and 13, 2020, before they were submitted via MAX on December 9, 2020. These materials were submitted to the JAB, including representatives of GSA, DoD, and DHS, and were false for the reasons set forth above.

**Request 13** (Indictment ¶¶ 45–46)

- Count Two charges that, on or about May 4, 2021, the defendant caused to be transmitted by wire the submission of FedRAMP assessment and authorization materials to the JAB via OMB MAX. The materially false and fraudulent pretenses, representations, and promises include the representations described in the government's responses to Requests 2 through 4. Additionally, in connection with this wire transmission, on or about May 4 and May 6, 2021, the defendant made oral and written representations to the Army that the Platform maintained security controls at IL5 to induce the Army to sponsor the Platform's DoD provisional authorization, including the representation that "the AIP system is currently being maintained at the IL5 throughout the entire approval process." These representations were false for the reasons stated above.

**Request 14** (Indictment ¶ 48)

- Count Three (Major Fraud) charges that from at least in or around March 2020 through at least in or around November 2021, the defendant executed a scheme and artifice to defraud the United States in connection with the NIFMS Contract. The materially false and fraudulent pretenses, representations, and promises that the defendant made during this period include all of the representations identified in the government's responses to Requests 1 through 13, above, which were directed at assessors, the JAB, and the Army in connection with obtaining and maintaining the Platform's FedRAMP authorization and DoD provisional authorization necessary to perform the NIFMS Contract.

**Request 15** (Indictment ¶ 51)

- Count Four (Obstruction of a Federal Audit) charges that during the 2020 Assessment, the defendant aided and abetted the making of false and misleading representations and submissions to assessors and authorizing officials. These include: (a) false representations in the FedRAMP High System Security Plan (Version 4.0) and DoD IL5 Addendum submitted to the 3PAO in mid-June 2020; (b) false representations made during virtual demonstrations with assessors between approximately June and October 2020; (c) fraudulent artifacts submitted to the 3PAO, including doctored screenshots and fabricated evidence regarding audit logging, access control automation, and monitoring capabilities; (d) the FedRAMP High Readiness Assessment Report submitted to the JAB on or about July 10, 2020; (e) the Significant Change Request submitted to the JAB on or about September 28, 2020; and (f) the FedRAMP assessment and authorization package submitted to the JAB via OMB MAX in November and December 2020; and the FedRAMP High System Security Plan (Version 5.0) submitted in January 2021. These representations were made to assessors and to the JAB. The specific false representations and the manner in which they were false are described in the government's responses to Requests 2 through 4, above.

**Request 16** (Indictment ¶ 53)

- Count Five (Obstruction of a Federal Audit) charges that during the 2021 Assessment, the defendant aided and abetted the making of false and misleading representations and submissions to assessors and authorizing officials. These include: (a) false representations in the FedRAMP System Security Plan (Version 6.0) submitted to assessors in mid-June 2021, including false representations that all administrators accessed the Platform using Yubikeys; (b) false representations made during virtual demonstrations with assessors between approximately July and September 2021, including the fraudulent demonstration of Yubikey implementation; (c) fraudulent artifacts submitted to the 3PAO, including manipulated screenshots and false evidence regarding logging, monitoring, and alerting; (d) assessment and authorization materials submitted to the Army via eMASS on or about May 26, 2021; and (e) false and misleading representations made to the 3PAO in connection with the replacement of a fraudulent logging artifact, in which the defendant concealed the true reason for the replacement. These representations were made to assessors from the 3PAO, the JAB, and the Army, and were false for the reasons stated in the government's responses above.

**Request 17** (Indictment ¶¶ 5, 19)

- The false and misleading representations made by the defendant as part of the scheme to defraud are those described in the government's responses to Requests 1 through 16, above. With respect to the "others" with whom the defendant engaged in the scheme, the government identifies Employee 1 (Michael Craig) as a knowing participant. The government addresses the identification of additional individuals in Section D below.

### B. Aiding and Abetting (Requests 18-28)

Requests 18 through 28 largely duplicate the requests in the first category but reframe them around the aiding and abetting theory of liability. These requests ask the government to identify the principal actor for each alleged false statement, the manner in which the defendant caused the statement to be made, and the content of each statement. As a preliminary matter, the indictment is not required to specify whether the defendant acted as the principal or accomplice. Section 2 liability is not a separate offense but merely removes the distinction between principals and accessories. The government is not required to elect between these theories prior to trial.

Subject to that reservation, the government intends to prove the defendant aided and abetted the scheme and the endeavor to obstruct, impede or influence federal auditors by, among other things: (a) directing subordinates how to respond to auditors, including by instructing subordinates to avoid assessors' questions, to read from prepared scripts, and to "stop sharing while you look for something" during virtual demonstrations; (b) participating in and monitoring virtual demonstrations during which false representations were made; (c) directing the preparation and transmittal of system security plans and other materials, including presentations, containing information the defendant knew was inaccurate regarding the Platform's architecture and security controls; (d) requiring that all decisions be vetted through her; and (e) failing to report known issues to FedRAMP.

### C.  Acts of Concealment (Requests 29-36)

The defendant's requests for particulars regarding concealment again seek evidentiary detail that the indictment is not required to provide. The indictment identifies the nature of the concealment with specificity: the defendant concealed known deficiencies in security controls from assessors, authorizing officials, government customers, and outside consultants by submitting false assessment and authorization materials and failing to correct known misrepresentations. *See* Indictment ¶¶ 23–25, 32, 34, 38–40. The indictment further identifies specific instances of concealment, including the defendant's acknowledgment that the Platform lacked required multi-factor authentication and her response to a subordinate's admission that they had "dodged the [multi-factor authentication] implementation bullet" (¶¶ 38, 40). These allegations provide the defendant with ample notice of the nature of the concealment at issue.

### D.  Identities of Individuals Referenced in the Indictment (Requests 37–40)

With respect to the identities of individuals, the indictment describes Employee 1 and Employee 2 and their respective roles (¶¶ 3–4) and periods of employment. The defendant's knowledge of who these individuals are is evident from her direct supervisory relationship with them. The defendant also interacted directly with the outside firm, assessors, authorizing officials, and government customers described in the indictment.

For avoidance of any doubt, Company A is Accenture Federal Services. Employee 1 is Michael Craig, and Employee 2 is Christopher Wright. The 3PAO was Coalfire Systems. The lead assessor was Taimur Masood. The authorizing body for FedRAMP was the Joint Authorization Board. The outside firm engaged to prepare system security plans was Kratos. The Army representatives involved in the NIFMS contract and DoD authorization process included David LaPradd, among others.

As to Request 37, the "others known . . . to the Grand Jury" (¶ 19) include Michael Craig, who pleaded guilty to obstruction of a federal audit on December 4, 2025. The government is not required to identify uncharged individuals where the defendant is aware of the relevant participants. Similarly, as to Request 39, which seeks the identification of all "unindicted co-conspirators," the indictment does not charge a conspiracy, and there is no requirement to identify unindicted coconspirators in a bill of particulars.

Additional participants in the scheme are identified in the discovery materials. To date, the government has produced more than 30 reports of interviews conducted during its investigation and specifically identified the location of those materials in the discovery by bates numbers in the indices accompanying each production.   The government will continue to provide such information in accordance with its obligations under *Brady*, *Giglio*, and the Jencks Act.

### V.      Index of Key Documents Supporting the Indictment

In addition to the foregoing, the government has provided the attached index of key documents supporting the allegations in the indictment. This index is illustrative and non-exhaustive; the government reserves the right to present additional evidence at trial consistent with the charges.

## VI.    Reservation of Rights

The foregoing voluntary disclosures are provided without prejudice to the government's position that the indictment is sufficient as returned. Nothing herein shall be construed as limiting the government's proof at trial to the specific documents, representations, or individuals identified in this letter. The government reserves the right to present all evidence consistent with the charges in the indictment. Should the defendant elect to file a motion for a bill of particulars, the government will respond in accordance with the Court's schedule.

Please do not hesitate to contact us with any questions.

Sincerely,

_/s/ Lauren Archer_
Lauren Archer
Paul Hayden

10

**Index of Key Documents Supporting the Indictment**

| Ind. ¶ | Date | Description | Production Beg – End |
|---|---|---|---|
| ¶¶ 17–18 | 04/29/2020 | Signed NAFBA1-20-F-0149 Increment 2 (NIFMS Task Order) | DOJ-PROD2E-0000237237 – DOJ-PROD2E-0000237255 |
| ¶¶ 17–18 | 12/15/2020 | Signed NAFBA1-21-F-0017 Increment 3 (NIFMS Task Order) | DOJ-PROD2E-0000237374 – DOJ-PROD2E-0000237405 |
| ¶¶ 17–18 | 08/31/2021 | Signed NAFBA1-21-F-0141 (NIFMS Task Order) | DOJ-PROD2E-0000237449 – DOJ-PROD2E-0000237451 |
| ¶¶ 22, 28 | 03/10/2020 | FedRAMP High Uplift Significant Change Request | DOJ-PROD2E-0000374202 – DOJ-PROD2E-0000374213 |
| ¶ 33 | 09/28/2020 | FedRAMP High Uplift Significant Change Request | DOJ-PROD2E-0000374163 – DOJ-PROD2E-0000374174 |
| ¶ 29 | 04/29/2020 | Employee 2 email: "IMPORTANT Risk Tracker and Identified Vulnerabilities as a result of the SSP HIGH Interviews" | DOJ-PROD1A-0000686925 |
| ¶ 29 | 04/29/2020 | 2020 FedRAMP HIGH Annual Review Open Findings Risk Tracker (attachment) | DOJ-PROD1A-0000686926 |
| ¶ 29 | 05/12/2020 | Employee 2 email re risks and deficient access controls | DOJ-PROD1A-0000534340 – DOJ-PROD1A-0000534341 |
| ¶ 29 | 04/29/2020 | Employee 2 email re platform risks | DOJ-PROD1A-0000540490 |
| ¶ 30 | 05/29/2020 | Outside consultant email: "IL5 Addendum Delivery Deadline" warning of unimplemented controls | DOJ-PROD1O-0000059084 – DOJ-PROD1O-0000059085 |
| ¶ 30 | 06/01/2020 | "Please review – Revised AIP IL5 Gap Analysis" (email and attachment) | DOJ-PROD1O-0000059113 – DOJ-PROD1O-0000059114 |
| ¶ 30 | 06/02/2020 | Outside firm email: "For AFS Review – AIP IL5 Gap Analysis" and Accenture IL5 Gap Analysis spreadsheet | DOJ-PROD1O-0000059115 – DOJ-PROD1O-0000059118; DOJ-PROD1A-0000210903 |
| ¶¶ 23–25 | 06/12/2020 | AIP FedRAMP SSP 2020 (Version 4.0) | DOJ-PROD1A-0000204787 – DOJ-PROD1A-0000205404 |
| ¶¶ 23–25 | 01/29/2021 | AIP FedRAMP SSP 2020 (Version 5.0) | DOJ-PROD1A-0000305249 – DOJ-PROD1A-0000305879 |
| ¶¶ 23–25 | 06/12/2020 | AIP IL5 High SSP Addendum | DOJ-PROD2E-0000243404 – DOJ-PROD2E-0000243718 |
| ¶¶ 23–25 | 06/12/2020 | [DRAFT] AIP IL5 High SSP Addendum | DOJ-PROD2B-0000097379 – DOJ-PROD2B-0000097699; DOJ-PROD1A-0000358851 – DOJ-PROD1A-0000359171 |
| ¶ 31 | 07/09/2020 | AIP-High-RAR_20200709_Final (FedRAMP High Readiness Assessment Report) | DOJ-PROD1A-0000789805 – DOJ-PROD1A-0000789873 |
| ¶ 31 | 07/10/2020 | Email: "[FedRAMP] Re: AIP High RAR uploaded to MAX" | DOJ-PROD1A-0000518349 – DOJ-PROD1A-0000518351 |
| ¶ 34 | 11/03/2020 | Coalfire assessment materials | DOJ-PROD1L-0000376990 |
| ¶ 34 | 11/16/2020 | Email: Defendant's approval of FedRAMP High uplift package for submission to JAB | DOJ-PROD1A-0000507330 – DOJ-PROD1A-0000507332 |
| ¶ 34 | 12/14/2020 | Email re completion of FedRAMP assessment/authorization submission | DOJ-PROD1A-0000527147 – DOJ-PROD1A-0000527148 |
| ¶ 36 | 07/24/2020 | FedRAMP AIP 2020 IL5 SAP (Security Assessment Plan, signed) | DOJ-PROD2E-0000343299 – DOJ-PROD2E-0000343322 |
| ¶ 36 | 11/13/2020 | AIP-IL5-RAR-05142021 Final (DoD IL5 Readiness Assessment Report) | DOJ-PROD2E-0000343227 – DOJ-PROD2E-0000343298 |

| ¶ 37 | 11/11/2020 | AFS AIP-FedRAMP DoD IL5 SAR (Security Assessment Report) | DOJ-PROD2E-0000243275 – DOJ-PROD2E-0000243319 |
|---|---|---|---|
| ¶ 35 | 01/20/2021 | SLA Between AIP and NIFMS (signed by defendant) | DOJ-PROD2E-0000330359 – DOJ-PROD2E-0000330374 |
| ¶ 35 | 01/28/2021 | SLA Between AIP and NIFMS (signed by defendant) | DOJ-PROD2E-0000348008 – DOJ-PROD2E-0000348023 |
| ¶ 36 | 05/18/2021 | Email to Army re: Cloud Service Offering Form (transmitting IL5 SAP and FedRAMP+ RAR) | DOJ-PROD2E-0000343221 – DOJ-PROD2E-0000343226 |
| ¶ 37 | 05/26/2021 | Email re submission to Army via eMASS of SSP v5.0, IL5 Addendum, SAR, and POA&M | DOJ-PROD1B-0000258758 – PROD1B-0000258763; DOJ-PROD1E-0000111746 |
| ¶ 38 | 06/23/2021 | Defendant's email re Yubikey/MFA noncompliance ("we will have HIGH findings") | DOJ-PROD1B-0000255075 – PROD1B-0000255081 |
| ¶ 38 | 06/24/2021 | Defendant's "Hale Mary" email re passing 2021 assessment | DOJ-PROD1A-0000527006 |
| ¶ 40 | 07/12/2021 | Internal chat during demonstration ("stop sharing while you look for something"; "dodged the [MFA] implementation bullet") | DOJ-PROD1A-0000144704 – PROD1A-0000144713; DOJ-PROD1A-0000110422 – DOJ-PROD1A-0000110423 |
| ¶ 40 | 07/13/2021 | Teams chat re "highly cherry-picked sample of users-to-authenticators" | DOJ-PROD1A-0000058727 – DOJ-PROD1A-0000058745 |
| ¶ 41 | 07/26/2021 | Email re FedRAMP P-ATO status | DOJ-PROD1A-0000505453 |
| ¶ 41 | 07/27/2021 | Email: "AIP JAB PATO GRANTED!" | DOJ-PROD2E-0000339153 – DOJ-PROD2E-0000339154 |
| ¶ 42 | 08/19/2021 | Email: "Architecture Briefing – Readiness Review for DoD PA" and attached briefing | DOJ-PROD2E-0000338182 – DOJ-PROD2E-0000338201 |
| ¶ 42 | 09/07/2021 | Email: "RE: Architecture Briefing – Readiness Review for DoD PA" and attached briefing v2 | DOJ-PROD2E-0000336587 – DOJ-PROD2E-0000336607 |
| ¶ 42 | 09/21/2021 | Email: "RE: Accenture Insights Platform Readiness Review for DoD PA Process" and attached briefing | DOJ-PROD2E-0000349124 – DOJ-PROD2E-0000349145 |
| ¶ 42 | 09/21/2021 | 2021 AIP Annual SCR FedRAMP SRTM Final (Security Requirements Traceability Matrix) | DOJ-PROD1L-0000085156 – DOJ-PROD1L-0000086934 |
| ¶ 46 | 12/08/2020 | Email re submission of assessment materials to JAB via MAX | DOJ-PROD1A-0000518027 – DOJ-PROD1A-0000518028 |
| ¶ 46 | 12/09/2020 | Email confirming submission of FedRAMP assessment/authorization materials via MAX | DOJ-PROD1A-0000527481 – DOJ-PROD1A-0000527482 |
| ¶ 46 | 12/10/2020 | Email re MAX submission of authorization materials | DOJ-PROD2A-0000459224 |
| ¶ 46 | 05/04/2021 | [MAX] FEDRAMP EXTERNAL – AIP Significant Changes | DOJ-PROD1L-0000359143 |
| ¶ 46 | 05/05/2021 | Email re submission of FedRAMP assessment/authorization materials via MAX | DOJ-PROD1A-0000506037 – DOJ-PROD1A-0000506041 |
| ¶ 46 | 05/05/2021 | Email: "RE: Cloud Service Offering Form Requires Completion" | DOJ-PROD2E-0000342717 – DOJ-PROD2E-0000342722 |