**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 1:25-cr-00383-LLA** |
| **v.** | : | |
| | : | |
| **DANIELLE HILLMER,** | : | |
| | : | |
| **Defendant.** | : | |

**REPLY IN SUPPORT OF DEFENDANT DANIELLE HILLMER'S REQUEST FOR ISSUANCE OF RULE 17(C) SUBPOENAS AND ORDER FOR EARLY RETURN**

Danielle Hillmer, by and through undersigned counsel, respectfully submits this Reply in support of her Ex Parte Memorandum of Law in Support of her Request for Issuance of Rule 17(c) Subpoenas (ECF No. 45) ("Motion" or "Mot.") and in response to the government's Opposition to Defendant's Notice of Ex Parte Filing (ECF No. 49) ("Opposition" or "Opp.").

During the *ex parte* portion of the September 17, 2026, status conference, Ms. Hillmer consented to the Court filing the as-issued subpoenas on the public docket and consented to sharing the subpoena returns with the government pursuant to Rule 17(c)(1). Further, the Court appeared inclined to permit Ms. Hillmer's Motion and certain exhibits to remain *ex parte* and under seal. To expedite the Court's consideration of this matter and limit the number of issues for resolution, on September 23, 2026, Ms. Hillmer's counsel shared the requested subpoenas with attorneys from the Department of Justice ("DOJ") with the understanding that both parties would be prepared to address their substance at the September 29, 2026, status conference.

Accordingly, this filing addresses (1) the appropriateness of maintaining Ms. Hillmer's Motion and certain exhibits *ex parte* and under seal; and (2) whether Ms. Hillmer's requests satisfy the *Nixon* standard.

## INTRODUCTION

Ms. Hillmer seeks production of trial evidence from four entities that she is criminally charged with defrauding: Coalfire Systems, Inc. ("Coalfire"), the General Services Administration ("GSA"), the Department of Homeland Security ("DHS"), and the Department of Defense ("DoD"). *See generally* Ind. Coalfire was the third-party independent assessment organization ("3PAO") that evaluated the security of the cloud-based platform (the "Platform") that Company A sold to federal government agencies. *See* Ind. ¶¶ 1, 11-12; ECF No. 21-2 at 9 (identifying Coalfire as the 3PAO). GSA, DHS, and DoD comprised the Joint Authorization Board ("JAB"), which was a "governing body for [the Federal Risk and Authorization Management Program ("FedRAMP")]." *See* Ind. ¶¶ 6, 8. In addition, GSA administered FedRAMP. *See id.* ¶ 7. The Indictment alleges that Ms. Hillmer orchestrated a scheme to defraud Coalfire and the JAB agencies by making false representations about the Platform's security. *See, e.g.*, *id.* ¶¶ 22, 25, 28, 31, 33-34, 41, 43.

Through a diligent review of the government's voluminous productions, Ms. Hillmer has identified discrete categories of trial evidence in the possession of third parties that are necessary for her defense. *See In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988) ("Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in [their] favor."). Pursuant to applicable precedent, addressed below, and this District's own Rule 17(c) subpoena form, Ms. Hillmer made her request *ex parte* to preserve confidential trial strategy that reveals how she intends to present the requested evidence to the jury in this case. Although not required to do so, Ms. Hillmer provided the DOJ prosecutors with a courtesy notice informing them that she had requested multiple subpoenas *ex parte*. The government responded by filing an eight-page opposition less than an hour before the previously-scheduled status

conference and without prior notice to Ms. Hillmer's counsel. Given the upcoming trial date, Ms. Hillmer agreed to respond on an expedited timeline to address the government's brief and to reiterate her need for the requested evidence to effectuate her defense at trial.

## ARGUMENT

### I. Ms. Hillmer's Rule 17(c) Application Was Properly Submitted *Ex Parte*.

Ms. Hillmer respectfully requests this Court maintain her application *ex parte* and under seal. The government relies on two out-of-Circuit, cases for the proposition that "Rule 17(c) does not provide that a defendant is entitled to proceed *ex parte*": *United States v. Urlacher*, 136 F.R.D. 550, 555 (W.D.N.Y. 1991), and *United States v. Hankton*, No. 12-cr-1, 2014 WL 3385126, at *1 (E.D. La. July 9, 2014). Opp. at 2. The reasoning of these cases is not persuasive.

In *Urlacher*, the court reasoned that a defendant cannot proceed *ex parte* under Rule 17(c) because: (1) "[t]here can be no 'right' to ex parte procurement of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties inspection prior to trial"; and (2) "[t]here is a presumption in favor of a First Amendment right of access to pretrial proceedings . . . ." 136 F.R.D. at 556. The court in *Hankton* further relied on *Urlacher*'s analysis of Rule 17(b), which permits an indigent defendant to obtain a witness subpoena *ex parte*, and Rule 17(c), which is silent on *ex parte* procedures, as evidence that Rule 17(c) does not permit a defendant to proceed *ex parte*. *See Hankton*, 2014 WL 3385126, at *1.[1]

While a handful of courts have prevented defendants from seeking subpoenas *ex parte*, the U.S. District Court of the District of Columbia is not one of them, and numerous courts across

[1] Only two cases have cited *Hankton* and, in both cases, the defendant was permitted to file Rule 17(c) subpoenas *ex parte*. *See United States v. Sarinana*, No. 25-cr-00865, 2025 WL 2062710 (D. Ariz. July 23, 2025); *United States v. Dominick*, No. 15-cr-289, 2016 WL 1408558 (E.D. La. Apr. 11, 2016).

multiple jurisdictions have analyzed *Urlacher* and found the decision to be poorly reasoned. *See, e.g.*, *United States v. Beckford*, 964 F. Supp. 1010, 1028-30 (E.D. Va. 1997); *United States v. Tomison*, 969 F. Supp. 587, 595 (E.D. Cal. 1997); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995).

In *Beckford*, the trial court conducted a detailed analysis of *Urlacher* and determined that the court's reasoning was not persuasive. In part, the *Beckford* court disagreed with the *Urlacher* court's conclusion that Rule 17(c) prohibited *ex parte* applications simply because Rule 17(c) is silent on the topic. *See Beckford*, 964 F. Supp. at 1029. Further, the *Beckford* court emphasized that public access to the courts, which was a justification presented by the *Urlacher* court, was not absolute; rather, "the slight burden imposed upon the free access to the courts . . . most often will be overcome by a defendant's Sixth Amendment right to compulsory process without being required to disclose his witnesses, trial strategy and other aspects of his defense to the Government and the public at large." *Id.* at 1029-30. Similarly, in *Tomison*, the court found that cases that follow *Urlacher* "either rely upon readings of the text which failed to recognize ambiguities, place an undue emphasis on curtailing discovery abuses without acknowledging the ability of courts to enforce the standards without participation from the government, and/or apply qualified First Amendment principles without balancing overriding constitutional interests of the defendant." *Tomison*, 969 F. Supp. at 595.

Indeed, courts regularly permit either a defendant or the U.S. government to submit *ex parte* applications for Rule 17(c) subpoenas, including when disclosure would require the party to reveal its trial strategy. *See Tomison*, 969 F. Supp. at 595 (finding that Rule 17(c) "should be interpreted to provide for ex-parte applications in situations . . . where the defendant . . . cannot make the required showing without revealing their trial strategy."); *United States v. McClure*, Nos.

08-cr-100, 08-cr-270, 2009 WL 937502, at *11 (E.D. Cal. Apr. 6, 2009) ("Caselaw, the Advisory Committee's Notes, and the text of the Rule 17(c) itself indicate that the court must make an individualized, case-by-case determination as to whether the proponent of a Rule 17(c) subpoena has made a sufficient 'showing of the need for confidentiality.'" (quoting *Tomison*, 969 F. Supp. at 591 n.8)); *Beckford*, 964 F. Supp. at 1031 (holding that a party's burden to proceed e*x parte* is met in "circumstances where documents could be expected to be of use to the defense and, as to which, a satisfactory *Nixon* showing could result in the disclosure of trial tactics, the actual defense to be advanced at trial, or other undue disclosure to the Government."); *United States v. Ray*, 337 F.R.D. 561, 572 (S.D.N.Y. 2020) ("[A] good faith effort to seek records from the Government does not foreclose the defense from making an *ex parte* application to the Court for Rule 17 subpoenas seeking similar records." (citation omitted)); *United States v. Kravetz*, 706 F.3d 47, 53 n.4 (1st Cir. 2013) ("The text of Rule 17(c) does not expressly prohibit ex parte requests for subpoenas, and courts have found them to be permissible."); *United States v. Thompson*, PWG-19-604, 2020 U.S. Dist. LEXIS 82809, at *5 (D. Md. Apr. 23, 2020) (allowing the defense's petition and subpoenas to remain *ex parte* because "all of his requests will divulge a defense trial strategy"); *United States v. Turner*, No. 3:24-cr-00008, 2025 WL 678536, at *3 (W.D. Va. Mar. 3, 2025) ("[T]he Sixth Amendment right to compulsory process requires that, in certain circumstances, the Court provide an *ex parte* avenue for a defendant to seek a subpoena without disclosing the underlying details to the prosecution."); *United States v. Daniels*, 95 F. Supp. 2d 1160, 1162-63 (D. Kan. 2000) (finding *ex parte* applications permissible when the source or integrity of evidence would be "imperiled" or trial strategy disclosed).

Consistent with this precedent, courts in this District have permitted parties to submit Rule 17(c) motions to proceed *ex parte* and under seal. *See* Order, *United States v. Syring*, No. 1:18-

cr-00036-RDM (D.D.C. Oct. 31, 2018), ECF No. 25; Order, *United States v. Alorini*, No. 1:16-cr-00202-RC (D.D.C. Dec. 2, 2016), ECF No. 38 (issuing order to govern Rule 17(c) procedures since "parties may seek to have [Rule 17(c)] pretrial subpoenas issued *ex parte* or under seal[.]"). Indeed, this District's Rule 17 subpoena form itself provides for *ex parte* subpoenas. *See* Fed. R. Crim. P. 17(c) Subpoena Form, AO 89B (U.S. Courts July 2016).

Ms. Hillmer's Motion and designated exhibits should be maintained *ex parte* and under seal as the Motion details the theories of her defense to show the necessity of issuing the Rule 17(c) subpoenas. *See generally* Motion at 10-16. Ms. Hillmer directs the Court to the arguments set forth in her Motion, which detail how the requested categories of documents would be used to defend against counts of the Indictment, which is critical to Ms. Hillmer's defense. *See, e.g.*, *id.* at 5, 11; *see also Turner*, 2025 WL 678536, at *4 (allowing a defendant to proceed *ex parte* in part to prevent him from revealing information that would "affirmatively establish facts that contradict an element in one of the counts against him"). In addition, the Motion details Ms. Hillmer's theories of relevance, *see e.g., id.* at 10-11, 14-15, and admissibility, *see, e.g.*, *id.* at 12-13, 15-16. *See also Tomison*, 969 F. Supp. at 593-94 ("requiring that defendant share the showing [of relevancy, admissibility and specificity required under *Nixon*] would effectively force the defendant to reveal his or her theory of the case"). Further, the Motion describes in detail how the categories of requested documents bear on materiality, *see, e.g.*, Mot. at 14, and would provide information relevant to third parties central to the government's theory, *id.* at 12-13, 13-14. *See also Turner*, 2025 WL 678536, at *3 (allowing the defendant's motion for a Rule 17(c) subpoena to proceed *ex parte* to prevent defendant from divulging trial strategy related to "information that would undermine the credibility of one of the Government's witnesses"). Each of these purposes independently supports allowing Ms. Hillmer's motion to proceed *ex parte* as disclosing her

Motion would result in the "disclosure of the trial tactics [and] the actual defense to be advanced at trial." *Beckford*, 964 F. Supp. at 1030. As such, Ms. Hillmer respectfully requests this Court maintain her application *ex parte* and under seal.

### II. The Determination of Whether Ms. Hillmer's Rule 17 Subpoenas Comply with *Nixon* Rests with the Court, and the Government Should Not Be Permitted to Object.

As the Supreme Court has made clear, this Court has significant discretion in deciding whether to issue a subpoena under Rule 17(c). *See United States v. Nixon*, 418 U.S. 683, 702 (1974) ("Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues."); *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) ("The burden is on the court to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad."). Specifically, this Court has an independent obligation to assess subpoenas under Rule 17 for compliance and, consistent with *ex parte* procedures, need not rely on briefings from the government to determine whether Ms. Hillmer's subpoenas comply with Rule 17(c). *See United States v. Vo*, 78 F. Supp. 3d 171, 176 (D.D.C. 2015) ("the Court has an independent duty to review the propriety of the subpoena" (citations omitted)); *Tomison*, 969 F. Supp. at 594 ("[I]t is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose."); *Beckford*, 964 F. Supp. at 1029 ("in reviewing applications for subpoenas duces tecum, a court needs no assistance [from the opposing party] in applying the *Nixon* standard" (internal quotations omitted)).

The government does not have an unconditional right to object to Ms. Hillmer's Motion, exhibits, and/or subpoenas. Rather, the government must first establish standing before lodging its objections, which it has not done here. *See Vo*, 78 F. Supp. 3d at 175 (noting a party lacks

standing to challenge a Rule 17(c) subpoena directed at a third party unless the "subpoena infringes on the moving party's rights" (internal citations omitted)); *Ray*, 337 F.R.D. at 569 (Rule 17 "itself thus provides no requirement that the non-moving party be notified, and no right for the Government to oppose or move to quash ex parte subpoenas."); *Beckford*, 964 F. Supp. at 1023 ("In many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents."). For example, in *United States v. Chavez*, the government alleged that it had standing due to its alleged "interest in ensuring compliance with the rules." *United States v. Chavez*, No. 15-cr-00285-LHK-1 (VKD), 2020 WL 109703, at *4 (N.D. Cal. Jan. 9, 2020). The Court found that the government failed to establish standing on this basis, noting that while Rule 17(c) requires the defendant to obtain court approval through motion to issue a Rule 17(c) subpoena, "[t]hat requirement does not imply that the United States must necessarily have standing to oppose the motion. In fact, where a subpoena is directed to a non-party that is not part of the prosecution team, it is not at all surprising that the United States would have no standing to object."[2] *Id.*

The government's lack of standing to object to these Rule 17(c) subpoenas is confirmed by the text of Rule 17(c)(2), which provides that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be ***unreasonable*** or ***oppressive***." Fed. R. Crim. P. 17(c)(2) (emphasis added). But the government cannot object to the burden imposed by the subpoenas because it is not a recipient of the subpoenas and as such does not suffer an injury

[2] The government has provided a list of entities that claim comprise the prosecution team, which does not include the components of JAB agencies implicated in these requests. *See* Ex. 1, Government's August 18, 2026 Letter. The government has disclaimed possession, custody, or control over materials that do not belong to the prosecution team. *Id.*

sufficient to confer standing. *See Tileston v. Ullman*, 318 U.S. 44, 46 (1943) (no standing to raise third party's injury); *Tomison*, 969 F. Supp. at 592 n.11 (Rule 17 "restricts the grounds for challenge to oppression and unreasonableness . . . that restriction suggests that the government is not a party capable of challenging the subpoena"). Accordingly, the government does not have the right to object to Ms. Hillmer's Motion without establishing standing, which it has failed to do in its Opposition and is unable to do.

Finally, even if this Court determines that the government has standing to object, the government is necessarily limited to only object based on the grounds set forth in *Nixon*. 418 U.S. at 698. The government seemingly concedes as much by arguing in its opposition that *Nixon* is the applicable standard. *See* Opp. at 3-4. In addition, precedent makes clear that, prior to the issuance of the subpoena, the subpoena is only evaluated against the standard set forth in *Nixon*. *See, e.g.*, *Vo*, 78 F. Supp. 3d at 180 (noting that "[t]he standard for approval of a subpoena is well established" and identifying the *Nixon* standard).

Therefore, Ms. Hillmer respectfully requests that this Court find that the government does not have standing to object to her Motion, exhibits, and subpoenas. Should this Court determine that the government has standing to object, the government's objections should be limited to whether Ms. Hillmer has satisfied the *Nixon* standard.

### III. Ms. Hillmer's Subpoenas Satisfy *Nixon*'s Requirements Because They Request Relevant, Admissible, and Specific Trial Evidence.

The Court should issue the requested subpoenas because they clear *Nixon*'s three requirements: relevance, admissibility, and specificity. *Nixon*, 418 U.S. at 700. The government's Opposition primarily objects to the subpoenas on the basis of *Nixon*'s evidentiary requirements, which are the first two requirements, relevancy and admissibility. Courts in this District have made clear that "if a document is ***arguably*** relevant and admissible under the Rules of Evidence,

the *Nixon* 'evidentiary' requirement is likely satisfied" since it is often "difficult at the pretrial stage to determine with precision the admissibility of certain documents." *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (emphasis added); *see United States v. Van Avermaet*, No. 21-cr-443, 2024 WL 3835320, at *2 (D.D.C. Aug. 15, 2024) (applying the Rule 17 standard to analyze an international discovery dispute).

There can be no doubt that the subpoenas request relevant information: the recipients are the victims of the alleged scheme to defraud and each of the subpoena requests seek information squarely within the scope of the government's allegations. *See* Mot. 1-8, 10-15.[3] Turning to admissibility, Ms. Hillmer's Motion thoroughly addresses the admissibility of the requested categories of information.[4] Materials requested from Coalfire are admissible. Indeed, the vast majority of requested Coalfire materials consist of admissible business records made in the course of regularly conducted activity. *See* Fed. R. Evid. 803(6); *see also* Mot. at 12. As set forth in Ms. Hillmer's Motion, requests for communications among certain individuals will result in evidence that is admissible for notice and effect on the listener. *See* Mot. Ex. 1, Req. Nos. 6, 10, 11-12; Fed. R. Evid. 801(c); *see also* Mot. at 12. Some Coalfire materials will be similarly admissible under the state-of-mind exception to the extent that they reveal the then-existing knowledge, intent, plan, or understanding of key individuals. *See* Fed. R. Evid. 803(3); *see also* Mot. at 12-13. In addition, metadata requested from Coalfire will lay the foundation to authenticate exhibits under Rule 901 and 803(6). *See* Fed. R. Evid. 901, 803(6). Requests related to Mr. Masood, a likely trial witness,

---

[3] Ms. Hillmer's theories of relevance get at the heart of confidential trial strategy that she seeks to protect, so Ms. Hillmer respectfully declines to expand further on the public docket. Ms. Hillmer remains available to provide additional information or answer questions from the Court in a sealed and *ex parte* forum.

[4] For the benefit of the government, who is not privy to the Motion, this Reply restates her theories of admissibility in a manner that does not reveal confidential trial strategy.

are further admissible for impeachment and other direct evidence purposes. *See infra* at 14-15; *see also* Mot. at 12.

Documents requested from the JAB are relevant to the government's allegation that the JAB was defrauded and thus will also be admissible. *See* Fed. R. Evid. 401, 403; *see also* Mot. at 13-15. Documents that show what reviewers knew about the Platform, what information mattered to them, and how they reacted to alleged misrepresentations are admissible to show notice, knowledge, materiality, and effect on the listener. *See* Fed. R. Evid. 801(d); *see also* Mot. at 15. Documents that show reviewers' contemporaneous understanding, concerns, intent, or reasons for approving the Platform are additionally admissible under the state-of-mind exception to the rule against hearsay. *See* Fed. R. Evid. 803(3); *see also* Mot. at 15. And to the extent that JAB and Coalfire witnesses testify at trial, some documents may be additionally admissible to impeach or refresh recollection. *See* Fed. R. Evid. 607, 612, 613; *see also* Mot. at 15-16.

Ms. Hillmer's requests similarly meet *Nixon*'s specificity requirement. *Nixon*, 418 U.S. at 700; *see* Mot. at 13, 16 (explaining that Ms. Hillmer's requests are specific). The specificity requirement was intended to ensure that, once issued, subpoenas will provide potential objectors "enough knowledge about which documents are being requested so as to lodge any objections on relevancy or admissibility." *Libby*, 432 F. Supp. 2d at 32 (citation omitted). Ms. Hillmer's requests, which detail the discrete categories of information sought, include comprehensive definitions and instructions, provide more than enough information to facilitate objections at the proper time. *See id.* at 38 (finding certain subpoena requests for "all documents" to be specific where "each request provides a narrow subcategory of documents being sought, which cover a discrete topic and typically limit the pertinent time frame").

Since Ms. Hillmer's proposed subpoenas seek relevant, admissible, and specific trial

evidence, the Court should issue the requested subpoenas. *See id.* ("The specificity requirement ensures that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up." (citation omitted)). *Cf. United States v. Onyenso*, 2013 WL 5322651, at *1-3 (D.N.J. Sept. 20, 2013) (evaluating the *Nixon* factors to determine whether to authorize a Rule 17 subpoena); *United States v. Cuthbertson*, 630 F.2d 139, 145 (3d Cir. 1980) (explaining that the *Nixon* test applies where a party seeks pretrial production of documents). Nor do Ms. Hillmer's requests for evidence in this case—which are directed exclusively at third parties—infringe upon Rule 16, which governs the parties' discovery obligations. *See* Fed. R. Crim. P. 16 (regulating the government's disclosure, the defendant's disclosure, and other disclosure obligations that both parties must follow); *cf.* Opp. at 4 (citing cases regarding the distinction between Rule 16 discovery and Rule 17 subpoenas). Instead, Ms. Hillmer's requests fulfill the purpose of Rule 17: "to expedite [her] trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy*, 341 U.S. at 220.

### A. To the extent Ms. Hillmer requests impeachment material, pretrial return is justified to avoid delay and since all materials sought have non-impeachment purposes.

The government claims that Rule 17(c) subpoenas may not be authorized to procure evidence that is solely admissible for impeachment purposes. *See* Opp. at 5. Not so. As explained below, applicable precedent clearly supports pre-trial requests for impeachment material. And, even if pretrial return of impeachment materials were impermissible, all of Ms. Hillmer's requests are independently admissible for non-impeachment purposes.

Ms. Hillmer is entitled to the pre-trial production of impeachment material, to the extent that any is implicated in her proposed subpoenas. "Documents sought under Rule 17(c) for impeachment purposes have generally been deemed to satisfy *Nixon*'s relevance and admissibility requirements." *Libby*, 432 F. Supp. 2d at 36 (collecting cases); *see also Van Avermaet*, 2024 WL

3835320, at *2 ("[D]ocuments sought pursuant to a Rule 17(c) subpoena can be deemed admissible for a variety of purposes, including impeachment." (citations omitted)); *United States v. Liddy*, 354 F. Supp. 208, 212, 217 (D.D.C. 1972) (authorizing pretrial return of impeachment evidence); *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (same).

Pretrial return of impeachment material is particularly justified in this matter to avoid delay, which is consistent with Rule 17(c)'s purpose of expediting trial. *See Nixon*, 418 U.S. at 698-99 (recognizing that Rule 17(c)'s "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials"). This is a complex case and many of the documents produced in discovery are extremely technical. *See id.* at 701-02 (affirming the issuance of a subpoena for impeachment information where "analysis and possible transcription" of requested materials "may take a significant period of time"). For example, in *Libby*, Judge Walton authorized pretrial disclosure of materials that would "undoubtedly be admissible for impeachment" where "the Court can fathom no reason to delay the production of these documents to the defendant." *See Libby*, 432 F. Supp. 2d at 42-43. Although Judge Walton reasoned that other impeachment information was not admissible—and thus could not be requested—until after a witness testified at trial, he explained that requesting materials during trial would "not prejudice the defendant as the number of documents at issue is small and typewritten." *Id.* at 38 & n.13. Here, pretrial production of evidence that may also serve an impeachment purpose at trial is necessary for the defense to adequately review the materials because of their expected volume and technical nature. *See, e.g.*, *Nixon*, 418 U.S. at 699-700; *Tomison*, 969 F. Supp. at 593 ("In cases . . . where evidence relevant to guilt or punishment is in a third-party's possession and is too massive for the defendant to adequately review unless obtained prior to trial, pre-trial production through Rule 17(c) is necessary to preserve the defendant's constitutional right

to obtain and effectively use such evidence at trial."). Although the records could be secured via a trial subpoena, doing so would likely require Ms. Hillmer to request an adjournment that would delay trial after it had already begun.

Further, Ms. Hillmer does not request any materials that are ***solely*** relevant for impeachment purposes. *See Nixon*, 418 U.S. 701-02 (affirming the district court's issuance of a Rule 17(c) subpoena for impeachment information where, among other reasons, "there are other potential valid evidentiary uses for the same material"); *see also United States v. Stukenbrock*, No. 15-cr-00034, 2016 WL 11952581, at *2 (N.D. Cal. Sept. 29, 2016) (emphasizing that the defendant "identified valid potential evidentiary use of the requested materials over and above whatever impeachment value they might have"). Ms. Hillmer's proposed subpoena to Coalfire, for example, requests documents that are relevant for non-impeachment purposes. *See* Mot. Ex. 1, Req. Nos. 7-11; ECF No. 33-2 at 6; ECF No. 35 at 1-2. Ms. Hillmer has presented sufficient evidence that substantiates her position that these requests will return evidence that may be used to impeach Mr. Masood's likely trial testimony. *See* Mot. at 4-5, 10-11; *see also LaRouche Campaign*, 841 F.2d at 1180 (authorizing pretrial disclosure of material "intended for the sole purpose of impeach[ment]" where "a putative key trial witness, whose general testimony is already known, is scheduled to testify"). Yet, Ms. Hillmer's requests for information about Mr. Masood are also independently admissible. ***First***, requests for records related to Mr. Masood's training and certifications, as well as requests for records to show whom Mr. Masood supervised and was supervised by, are business records of Coalfire's regularly conducted activity. *See* Mot. Ex. 1, Req. Nos. 7-9; Fed. R. Evid. 803(6). ***Second***, communications authored by Mr. Masood related to the assessments, the Platform, and Company A are admissible to show Mr. Masood's state of mind. *See* Mot. Ex. 1, Req. No. 10; Fed. R. Evid. 803(3). ***Third***, communications between Mr. Masood

and Mr. Craig—a former coworker of Ms. Hillmer who pleaded guilty to obstructing a federal audit—are admissible to show Mr. Masood's knowledge of Mr. Craig's misconduct. *See* Mot. Ex. 1, Req. No. 11, Fed. R. Evid. 404(b)(2).

The complexity of this case, potential for trial delay, and direct evidentiary purposes for which Ms. Hillmer seeks documents distinguish the cases cited by the government. The government is correct that *Nixon* says impeachment is "generally" not a sufficient purpose for pretrial production. *See Nixon*, 418 U.S. at 701. But it disregards the Supreme Court's ultimate conclusion in *Nixon* that the trial court did not err in authorizing the pretrial production of the requested records, including impeachment evidence, because "there are other valid potential evidentiary uses for the same material" and review of the documents "may take a significant period of time." *Id.* at 701-02. And each of the out-of-circuit cases on which the government relies rejected a request for a Rule 17(c) subpoena because they ***solely*** sought impeachment material. *Cf. Onyenso*, 2013 WL 5322651, at *2 (rejecting request for Rule 17(c) subpoena where defendant "simply assert[ed] that he may uncover some impeachment material or otherwise relevant information regarding [a witness]"); *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (declining to authorize a pretrial subpoena for materials that could only be used for impeachment); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (quashing a subpoena where "[t]he ***only*** evidentiary use that defendants have been able to advance is that the [materials sought] could be used for impeachment purposes" (emphasis added)); *see also United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (rejecting a defendant's argument that impeachment materials could be obtained pretrial).

**B. Rule 17(h) does not bar Ms. Hillmer's requests, which are directed at third parties and not statements under the Rule.**

The government selectively quotes Rule 17(h) to argue that Ms. Hillmer cannot subpoena

***any*** statements from witnesses or prospective witnesses. *See* Opp. at 5-6. The full text of Rule 17(h), read in the context of Rule 26.2, which is cited in Rule 17(h), makes clear that Ms. Hillmer can seek witness statements from third parties. Regardless, Rule 17(h) does not implicate Ms. Hillmer's subpoenas because she does not seek witness statements as defined under the Rule.

***Third-party*** witness statements are discoverable under Rule 17(h). "Rule 17(h) should not be interpreted to prevent a party from subpoenaing witness statements in the possession of a non-party." *United States v. Chavez*, No. 15-cr-00285, 2020 WL 109703, at *3 (N.D. Cal. Jan. 9, 2020). *See also, e.g.*, *United States v. Young*, No. 03-20400, 2004 WL 784840, at *2-3 (W.D. Tenn. Mar. 4, 2004); *United States v. Goldstein*, No. 21-cr-550, 2023 WL 3662971, at *5-6 (E.D.N.Y. May 25, 2023).

Rule 17(h) instead imposes a limitation on the production of statements in the possession of either party, as set forth in Rule 26.2. *See* Fed. R. Crim. P. 17(h) (stating that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule" as "Rule 26.2 governs the production of [those] statement[s]."). *See also* Fed. R. Crim. P. 26.2(a); *Chavez*, 2020 WL 109703, at *4 (explaining that Rule 17(h) was adopted to establish coherency with Rule 26.2). Indeed, an earlier version of Rule 17(h) explicitly provided that "[s]tatements made by witnesses or prospective witnesses may not be subpoenaed *from the government or the defendant* under this rule." *See Goldstein*, 2023 WL 3662971, at *6 (citing Order of the Supreme Court, 207 F.R.D. 89, 442 (2002)) (emphasis added by *Goldstein*). The italicized language was removed from Rule 17(h) "as part of the general restyling of the Criminal Rules," but "the advisory committee's note indicates that this change was 'intended to be stylistic only.'" *See id.* (quoting Order of the Supreme Court, 207 F.R.D. at 443). This makes sense. If the government is correct that Rule 17(h) covers third-party statements, "defendants in criminal cases would have no ability to obtain

prior statements from witnesses that are not in the possession of the Government, as Rule 26.2 discovery is available only from parties, and not non-party witnesses." *Id.* at *5.

Although the government cites a few cases that disallow third-party subpoenas for witness statements, these cases entirely fail to consider the history or purpose of Rule 17(h). *See* Opp. at 5-6 (collecting cases). In *Phoenix*, a district court concluded with no analysis that subpoenas implicating third-party witness statements are not allowed. *United States v. Skylar Ariel Phoenix*, No. 14-cr-00318, 2015 WL 6094882, at *3 (N.D. Cal. Oct. 16, 2015). With no explanation, the trial court in *Zhu* similarly dismissed the defendant's argument that Rule 17(h) permitted the issuance of the requested subpoenas. *United States v. Yudong Zhu*, No. 13-cr-761, 2014 WL 5366107, at *3 (S.D.N.Y. Oct. 14, 2014). And, although the *Benanti* court at least acknowledged the connection between Rule 17(h) and Rule 26.2, the trial court's decision evaluated whether "statements" must be made to government agents or are part of the government's investigation—not whether a party may seek statements in the possession of a non-party. *United States v. Benanti*, No. 15-cr-177, 2017 WL 78734, at *3 (E.D. Tenn. Jan. 6, 2017). This Court should not be persuaded by cases in which "conclusions were reached summarily, without addressing the history or purpose of the rule." *Goldstein*, 2023 WL 3662971, at *5 (rejecting *Zhu*).

Rule 17(h) is thus not implicated by Ms. Hillmer's third-party requests for evidence. Although three of the subpoena recipients are executive agencies, the government claims that it does not have possession, custody, or control over materials from the JAB. *See* Ex. 1, Government's August 18, 2026 Letter (arguing that the government's discovery obligations only extend to the prosecution team, which does not include components of JAB agencies implicated in these requests). Further, although Ms. Hillmer has not yet reviewed all 17 million pages of discovery and does not have access to the government's subpoenas, Ms. Hillmer has endeavored

to request evidence that she does not believe the government possesses.[5]

Further, even if Rule 17(h) covers third-party requests, Ms. Hillmer does not request ***statements*** under this provision of the rule. "Rule 17(h) provides that the production of 'statements' of witnesses or prospective witnesses is governed by Federal Rule of Criminal Procedure 26.2." *Young*, 2004 WL 784840, at *2. *See* Fed. R. Crim. P. 17(h) (explaining that "Rule 26.2 governs the production of the statement[s]" that should not be disclosed under Rule 17); *see also Chavez*, 2020 WL 109703, at *4 (explaining that Rule 17(h) was added to the Criminal Rules to implement the *Jencks* Act, which was memorialized in Rule 26.2). But only three types of expressions qualify as statements under Rule 26.2. *See* Fed. R. Crim. P. 26.2(f). ***First***, the Rule covers "a written statement that the witness makes and signs, or otherwise adopts or approves." *Id.* at (f)(1). ***Second***, the Rule encompasses "a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording." *Id.* at (f)(2). ***Third***, the Rule includes "the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement." *Id.* at (f)(3). Precedent interpreting the *Jencks* Act makes clear that "[n]ot everything a witness has written constitutes his 'statement[.]'" *See United States v. Thomas*, 97 F.3d 1499, 1502 (D.C. Cir. 1996); *Young*, 2004 WL 784840, at *3 (authorizing Rule 17 subpoenas where "most of the items sought by [defendant] in the proposed subpoenas do not meet the definition of a 'statement' as that term is defined in Rule 26.2"). Accordingly, Ms. Hillmer's requests are proper.

---

[5] Based on the government's productions to date, the government did not apparently subpoena any of the JAB agencies. Coalfire has produced voluminous documents apparently in response to a grand jury subpoena. The government has not made the Coalfire subpoena requests available to Ms. Hillmer. To the extent that any subpoena recipient establishes that documents sought by Ms. Hillmer were produced to the government, Ms. Hillmer is willing to meet and confer with the recipients to narrow these portions of her requests.

## CONCLUSION

For the foregoing reasons, Ms. Hillmer respectfully requests that the Court grant undersigned counsel leave to issue the requested subpoenas *duces tecum* to Coalfire, GSA, DoD, and DHS, and that the Court require the production of records to undersigned counsel within 30 days of service of the subpoenas. Ms. Hillmer further requests that the Court maintain Ms. Hillmer's Motion and certain exhibits *ex parte* and under seal.

Dated: September 23, 2026

Respectfully submitted,

*/s/ Charles F. Connolly*
Charles F. Connolly, D.C. Bar No. 455969
Gerald M. Moody, Jr., D.C. Bar No. 90032072
Allison T. Coffin, D.C. Bar No. 1600869
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4070
cconnolly@akingump.com
gmoody@akingump.com
acoffin@akingump.com

*Counsel for Danielle Hillmer*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of September 2026, I filed the foregoing Reply in Support of Defendant Danielle Hillmer's Request for Issuance of Rule 17(c) Subpoenas with the Clerk of the Court for the U.S. District Court for the District of Columbia, using the Court's CM/ECF system.

Dated: September 23, 2026

Respectfully submitted,

*/s/ Charles F. Connolly*

Charles F. Connolly, D.C. Bar No. 455969
Gerald M. Moody, Jr., D.C. Bar No. 90032072
Allison T. Coffin, D.C. Bar No. 1600869
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4070
cconnolly@akingump.com
gmoody@akingump.com
acoffin@akingump.com

*Counsel for Danielle Hillmer*