**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**DANIELLE HILLMER,**<br><br>**Defendant.** | **CRIMINAL NO. 1:25-cr-00383-LLA** |

**United States' Objections to the Defendant's Proposed Rule 17(c) Subpoenas**

The United States, by and through undersigned counsel, respectfully objects to the Defendant's proposed Rule 17(c) subpoenas, filed on the public docket as ECF Nos. 52-1 through 52-4. The proposed Rule 17(c) subpoenas are overly broad, appear intended to permit the Defendant to embark on a "fishing expedition", and will cause unnecessary delay for the parties to prepare for trial. For these reasons, the government asks the Court to deny the Defendant's Ex Parte Memorandum of Law in Support of her Request for Issuance of Rule 17(c) Subpoenas (ECF No. 45) ("Ex Parte Motion").[1]

## I. The Government Has Standing to Object

The government files these objections pursuant to the Court's Minute Order dated September 24, 2026. Nonetheless, the Defendant submits that the government lacks standing to object to the proposed Rule 17(c) subpoenas citing, *inter alia*, *United States v. Tomison*, 969 F.Supp. 587 (E.D. Cal. 1997). (ECF No. 51 at 8-9). In *Tomison*, the Court had already issued the subpoenas, following which the government moved to quash. *Id.* at 588-89. Here, however, the government is not seeking to "quash" because the Court has not yet issued the requested subpoenas.

[1] Notwithstanding the government's stated objections to the Defendant's proposed Rule 17(c) subpoenas, the government is prepared and willing to confer with counsel for the Defendant to determine whether the parties may reach agreement in advance of the status conference on a substantially more limited set of document requests.

Should the Court grant the Defendant's Ex Parte Motion and issue the subpoenas, *then* the subpoenaed recipients would have an opportunity to move to quash them. That is not what is at stake now. The government properly filed a response in opposition to the Defendant's Ex Parte Motion raising three separate issues: (1) whether Defendant was entitled to proceed *ex parte*; (2) whether she met the *Nixon* standard; and (3) whether she should be allowed to maintain the secrecy of the documents. (*See* ECF No. 49). Thereafter, the Court granted the Defendant's Ex Parte Motion to the extent that it shall remain under seal but required the Defendant to file the proposed Rule 17(c) subpoenas on the public docket and invited the government to file its objections to them. (*See* Minute Order dated September 24, 2026). That is precisely what the government now proceeds to do.

## II. Rule 17(c) Subpoenas Must Meet a Substantial Threshold

The parties agree that—as set forth in *United States v. Nixon,* 418 U.S. 683, 700 (1974) and its progeny—the Defendant (the moving party) bears the burden of showing that the proposed Rule 17(c) subpoenas clear three "hurdles" before the Court may issue them. *See Cheney v. United States Dist. Court*, 542 U.S. 367, 386 (2004) (citing *Nixon*, 418 U.S. at 699). First, the Defendant must show that the documents sought are "relevant", *i.e.*, whether they have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting Fed. R. Evid. 401). Second, the Defendant must show that the documents sought "would be admissible" under the Federal Rules of Evidence. *Id.* (citing Fed. R. Evid. 401-415, 801-807). And third, the Defendant's request must "specify the records sought"— "[w]hile it may sometimes be impossible to describe fully the materials being sought, courts will not approve a subpoena for documents based upon requests for disclosure from broad categories of documents." *Id.* (citing *Nixon*, 418 U.S. at 700; *United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989)) (internal quotations omitted).

Importantly, Rule 17(c) subpoenas are not appropriate where the moving party "seeks materials procurable reasonably in advance of trial by exercise of due diligence, or operate as a general fishing expedition." *United States v. Trump*, 703 F. Supp. 3d 89, 92 (D.D.C. 2023) (citing *Nixon*,418 U.S. at 699-700 (internal quotations omitted). That is, the Defendant may not use Rule 17(c) subpoenas as "a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *Id.* (citing *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980)).

## III. The Defendant Fails to Show That her Proposed Rule 17(c) Subpoenas Meet the Threshold Set by *Nixon* for the Court to Issue Them

Each of the Defendant's proposed Rule 17(c) subpoenas include *20 or more* categories of requests to the receiving party. As detailed below, many of the requests relate to documents that likely already have been produced to the Defendant in discovery. The Defendant also fails to clear—as she must—the "specificity" and "relevance" hurdles to justify the issuance of the proposed Rule 17(c) subpoenas.[2]

### A. Many of the Documents Sought by the Defendant's Proposed Rule 17(c) Subpoenas Likely Already Were Produced to the Defendant

The government believes that many of the categories of documents sought by the proposed Rule 17(c) subpoenas have already been produced to the Defendant through the government's discovery and are therefore "procurable reasonably in advance of trial by exercise of due diligence." *See Trump*, 703 F. Supp. 3d at 93 (finding that Rule 17(c) subpoena was unnecessary with respect to materials already produced by the government to the defendant). As to the proposed Rule 17(c) subpoena to Coalfire, these include the following requests:

[2] Though not specifically addressed herein, the government reserves the right to argue that the documents sought are not admissible at trial under the Federal Rules of Evidence.

*Request #4:* Documents sufficient to identify each member of the Coalfire assessment team assigned to participate in or who actually participated in each of the Assessments, including each individual's name, title, the period of his or her participation, and his or her role in the Assessment.

*Request #5:* Documents sufficient to identify each supervisor, manager, quality reviewer, or other person responsible for overseeing, reviewing, or approving the work performed in connection with each of the Assessments.

*Request #6:* All Communications between You and the Joint Authorization Board ("JAB"), or any of its constituent agencies (the General Services Administration, the Department of Defense, or the Department of Homeland Security), relating to the Assessments or the Platform.

*Request #9:* Documents sufficient to identify individuals whom Taimur Masood supervised in any work related to the Assessments.

*Request #11:* Communications between Taimur Masood and Michael Craig at any time, regardless of subject matter, including Communications conducted through personal, mobile, or encrypted messaging applications through devices over which You have possession, custody, or control.

*Request #15:* All work papers prepared, maintained, or relied upon by Coalfire in connection with the Assessments, including testing notes, evidence logs, control test plans, sampling documentation, and supporting documentation.

*Request #17:* All work papers prepared, maintained, or relied upon by Coalfire in connection with the Assessments, including testing notes, evidence logs, control test plans, sampling documentation, and supporting documentation.

*Request #18:* All work papers prepared, maintained, or relied upon by Coalfire in connection with the Assessments, including testing notes, evidence logs, control test plans, sampling documentation, and supporting documentation.

(ECF No. 52-1).[3]

Likewise, the following requests for documents sought by the proposed Rule 17(c) subpoenas to the U.S. General Services Administration (GSA) (ECF No. 52-2), the U.S. Department of War (DOW) (ECF No. 52-3), and the U.S. Department of Homeland Security (DHS) (ECF No. 52-4), appear to relate to materials already produced to the Defendant:

*Request #7:* All Communications between You and Taimur Masood or Jean Kang relating to the Assessments or the Platform.

*Request #8:* All Communications between You and Michael Craig.

*Request #17:* Documents sufficient to show the date on which the decision to grant the FedRAMP High P-ATO was made.

*Request #18:* Documents sufficient to show the date on which David McKeown, John Sherman, Eric Hysen, or David Shive executed or signed the FedRAMP High P-ATO.

(ECF Nos. 52-2; 52-3; 52-4).

In advance of the Court's next status conference, the government remains willing to confer with counsel for the Defendant regarding these particular requests and whether any subset of them might remain outstanding.

B. <u>The Defendant's Requests Lack Specificity</u>

In *Trump*, this Court denied a motion for a Rule 17(c) subpoena where it found that the defendant did not "state with any specificity the information" sought. 703 F. Supp. 3d at 94. This Court further remarked that "[t]he broad scope of the records that Defendant seeks, and his vague description

---

[3] As the government has already produced all communications to and from AFS produced by Coalfire, arguably, it also has already produced the documents sought by *Request #10 (All Communications sent, received, or authored by Taimur Masood relating to the Assessments, the Platform, or AFS.)*

of their potential relevance, resemble less 'a good faith effort to obtain identified evidence' than they do 'a general fishing expedition' that attempts to use the [Rule 17(c) subpoena] as a discovery device." *Id.* (quoting *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 180 (D.D.C. 2015).

The Defendant's proposed Rule 17(c) subpoenas are similarly deficient. Contrary to her apparent positions that her requests are sufficiently specific because they detail "the discrete categories of information sought [and] include comprehensive definitions and instructions," (ECF No. 51 at 11), her exhaustive lists (e.g., "all….policies, procedures, manuals, guidelines, standards, templates, checklists, training materials, and quality-control or quality-assurance protocols in effect during the relevant period . . .") without any explanation of why each item is potentially relevant underscores the overly broad nature of the Defendant's proposed request for no specific purpose.

For example, the Defendant does not show how her request for "*[a]ll* Documents relating to any training, certification, credentialing, or professional qualification of Jean Kang or Taimur Masood during his or her tenure at Coalfire, including without limitation any training or certification relating to FedRAMP, DoD, cloud security, or 3PAO assessment methodologies, as well as any continuing education, recertification, or professional development relating thereto," (ECF No. 52-1; Request #7) (emphasis added), meets the specificity requirement set forth in *Nixon*. To the extent the Defendant believes these materials may be used for the impeachment of these witnesses, she has not shown any basis for concluding that these materials in fact contain such evidence—she is just on a "fishing expedition" to see what she might catch. *See Trump*, 703 F. Supp. 3d at 94 ("But Defendant provides no basis for concluding that the video recordings contain any such impeachment evidence.").

Many, if not all, the Defendant's remaining requests suffer from a similar lack of specificity. For example, she requests: "[a]ll audio recordings, video recordings, and transcripts of any interviews, virtual demonstrations, walkthroughs, or meetings conducted by or with Coalfire in connection with the

Assessments, including those involving AFS personnel" (ECF No. 52-1, Request #2); "[a]ll Communications, whether formal or informal, providing, reflecting, or relating to feedback, evaluations, or commentary on the performance, competence, or conduct of the Coalfire assessment team or any of its members in connection with the Assessments," (ECF No. 52-1; Request #12); "[a]ll internal Communications relating to Your approval, recommendation for authorization, or attestation regarding the Platform's implementation of security controls, including the basis for any such approval, recommendation, or attestation," (ECF No. 52-1; Request #13); "[a]ll policies, procedures, standards, and guidance that You provided to or imposed upon Coalfire governing its work as the third-party assessment organization ("3PAO"), including the accreditation requirements, certifications, and standards of conduct and independence that Coalfire agreed to comply with as a 3PAO," (ECF Nos. 52-2, 52-3, 52-4; Request #2); "Documents sufficient to show the training, qualifications, and certifications of Coalfire and its assessors, including any documents reflecting Coalfire's accreditation status as a 3PAO during the relevant period," (ECF Nos. 52-2, 52-3, 52-4; Request #3); "[a]ll Communications, whether formal or informal, providing, reflecting, or relating to feedback, evaluations, complaints, or commentary on the performance, competence, reliability, independence, or conduct of Coalfire" (ECF Nos. 52-2, 52-3, 52-4; Request #4).

The Defendant does not show how each of these (and other) requests are sufficiently specific in purpose, and therefore they should be denied.

### C. The Defendant Does Not Show How Her Requests for Documents Sought Are Relevant

The government is not privy to the Defendant's substantive arguments in her Ex Parte Motion purporting to show the relevancy of the proposed Rule 17(c) subpoenas. Nevertheless, the Defendant's conclusory statement in her Reply in Support of Defendant Danielle Hillmer's Request for Issuance of Rule 17(c) Subpoenas and Order for Early Return (ECF No. 51) that the proposed subpoenas "request

relevant information" because the recipients are each "victims" of the alleged scheme to defraud (ECF No. 51 at 10), does not suffice. Nor does the Defendant's blanket claim that the subpoenas "seek information squarely within the scope of the government's allegations." (ECF No. 51 at 10). At least in her public filing, the Defendant does not show how her requests for information seek information that would have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." For this reason, her Ex Parte Motion should be denied.

## IV. The Defendant's Proposed Rule 17(c) Subpoenas May Cause Undue Delay

The Defendant asks the Court—in the event that it grants her Ex Parte Motion and issues the proposed Rule 17(c) subpoenas—to "require the production of records" within 30 days of service of the subpoenas. But the overly broad scope of her proposed Rule 17(c) subpoenas (which contain a total of *89 separate requests*) make such a response deadline unrealistic. That, combined with the potential for the production of voluminous records in response to the proposed subpoenas will only serve unnecessarily to delay and complicate the parties efforts to prepare for trial.

For the foregoing reasons, the government respectfully requests the Court to deny the Defendant's Ex Parte Motion.

Respectfully submitted,

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
United States Department of Justice

By: <u>*/s/ Ariel Glasner*</u>
ARIEL GLASNER
AMANDA FRETTO LINGWOOD
Trial Attorneys
National Fraud Enforcement Division

United States Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20530
Amanda.Fretto.Lingwood@usdoj.gov

**Certificate of Service**

I hereby certify that I will cause the foregoing response to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ Ariel Glasner*
ARIEL GLASNER
Trial Attorney
National Fraud Enforcement Division
United States Department of Justice