**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 1:25-cr-00383-LLA** |
| | : | |
| **DANIELLE HILLMER** | : | |

**DANIELLE HILLMER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT THREE OF THE INDICTMENT**

Danielle Hillmer, by and through undersigned counsel, respectfully submits this memorandum in support of her Motion to Dismiss Count Three of the Indictment ("Motion to Dismiss") pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B).

Count Three of the Indictment suffers from a fundamental and fatal legal defect. Even accepting every factual allegation in the Indictment as true, the government has not alleged conduct that falls within the major fraud statute. Indeed, 18 U.S.C. § 1031 criminalizes the "execution" of a scheme to defraud the United States, not the scheme itself and not every act that may advance, support, or result from one. That distinction is critical because Congress made the "execution," not the scheme, the statute's unit of prosecution under Section 1031.

The Indictment nevertheless fails to charge a discrete fraudulent transaction that independently effectuated the alleged fraud. Rather, it charges Ms. Hillmer with major fraud based on her "requesting, obtaining, and receiving a FedRAMP High P-ATO" on July 27, 2021. On that date, Ms. Hillmer allegedly communicated with FedRAMP regarding an authorization request that had already been submitted and received that resulting authorization. The Indictment's allegations bear ***none*** of the hallmarks of a chargeable execution: they involve no new request for money or property, no new and independent obligation of candor, and no new and independent risk of loss.

Their significance, if any, derives entirely from an earlier submission that the government contends was fraudulent.

Section 1031 does not permit the government to transform conduct relating to a previously submitted request into a chargeable "execution" simply because it allegedly furthered a broader scheme. Yet that is precisely what Count Three attempts to do. Because the conduct identified as the charged unit of prosecution is not, as a matter of law, an "execution" within the meaning of Section 1031, Count Three fails to state an offense and must be dismissed.

**FACTUAL BACKGROUND**[1]

Between 2018 and 2021, Ms. Hillmer served as a senior manager at Company A, a government contractor that provided cloud computing services to the federal government through a secure cloud-based platform (the "Platform"). ECF No. 1, Indictment ("Ind.") ¶¶ 1, 2. The Indictment alleges that Ms. Hillmer was responsible for overseeing cybersecurity assessments of the Platform and engaged in a 20-month fraudulent scheme to help Company A receive and maintain federal business by securing required cybersecurity authorizations for the Platform. *See id.* ¶¶ 2, 5, 20.

Obtaining those authorizations required Company A to navigate cybersecurity review frameworks administered by the Federal Risk and Authorization Management Program ("FedRAMP") and the Department of Defense ("DoD"). Ind. ¶¶ 6-16. Under FedRAMP, a uniform and government-wide monitoring program for cloud services administered by the General Services Administration ("GSA") and governed by the Joint Authorization Board ("JAB"), cloud-service providers were required to obtain an authorization to operate ("ATO") at an appropriate

[1] For purposes of this motion only, the defendant accepts the allegations in the Indictment as true. *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015).

risk-impact level to store information. *Id.* ¶¶ 6-11. FedRAMP categorized cloud systems into Low, Moderate, and High impact levels based on the sensitivity of the information involved. *Id.* ¶ 9. To obtain and maintain an ATO at the applicable impact level, cloud-service providers were required to demonstrate compliance with corresponding security requirements, known as security controls. *Id.* ¶ 9.

Separately, the DoD maintained its own authorization framework for cloud services provided to DoD components. Ind. ¶¶ 14-16. That framework similarly used risk-impact levels, known as Impact Levels ("ILs"), that increased with the sensitivity of the information to be hosted. *Id.* ¶ 16. Although some DoD requirements overlapped with those of FedRAMP, higher DoD ILs required compliance with additional DoD-specific controls. *Id.* To obtain authorization, a provider was required to secure sponsorship from a DoD component, which then initiated the DoD review process involving assessments and monitoring submissions. *Id.* ¶ 15.

The Platform was initially authorized at the FedRAMP Moderate level. Ind. ¶ 22. In 2020, Company A submitted a request to FedRAMP and the JAB, seeking to uplift the Platform from FedRAMP Moderate to High. *Id.* ¶¶ 22, 28. The Indictment alleges that Ms. Hillmer made, or caused to be made, false and misleading representations concerning the Platform's security controls and risk posture during the related 2020 assessment and authorization process, which occurred between June 2020 through December 2020. *See id.* ¶¶ 23-33. The assessment culminated in the submission of FedRAMP assessment and authorization materials to FedRAMP and the JAB in November and December 2020; the Indictment alleges that Ms. Hillmer knew these documents "contained materially false and misleading representations about the Platform[.]" *Id.* ¶ 34. Company A ultimately received a FedRAMP High provisional ATO ("P-ATO") on July 27, 2021. *Id.* ¶ 41.

On December 9, 2025, a grand jury indicted Ms. Hillmer for wire fraud (Counts One and Two), major fraud (Count Three), and obstruction of a federal audit (Counts Four and Five) due to her role in the alleged scheme to defraud. *See generally* Ind.

Count Three, the major fraud count, rests on allegations that, on July 27, 2021, Ms. Hillmer "knowingly executed, and attempted to execute" a scheme to defraud the United States by "requesting, obtaining, and receiving a FedRAMP High P-ATO for Company A and the Platform." Ind. ¶ 49. On that date, Ms. Hillmer emailed FedRAMP seeking an update on Company A's pending authorization request, and the JAB later responded by issuing a FedRAMP High P-ATO. *Id.* ¶ 41. The authorization letter stated that the P-ATO was granted upon the belief that the Platform's security authorization package "accurately documents and clearly defines the risk considerations." *Id.*

## LEGAL STANDARD

Under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an indictment for a "defect in the indictment . . . including . . . failure to state an offense," provided "the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(v). In determining such a motion, the court is limited to the face of the indictment and, more specifically, "the *language used* to charge the crimes." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)). That limitation reflects the Fifth Amendment's requirement that criminal prosecutions be confined to "the unique allegations of the indictments returned by the grand jury." *Sunia*, 643 F. Supp. 2d at 60 (quoting *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001)).

In considering a motion to dismiss the indictment, courts "assume[] the truth of [the indictment's] factual allegations." *Ballestas*, 795 F.3d at 149. But courts are not required to accept

legal conclusions embedded within those allegations. *See United States v. Brewbaker*, 87 F.4th 563, 579 (4th Cir. 2023) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "The operative question is whether the allegations [of the indictment], if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *Sanford*, 859 F. Supp. 2d at 107.

**ARGUMENT**

Count Three of the Indictment rests on a theory of major fraud that sweeps more broadly than Section 1031 authorizes. The statute criminalizes the "execut[ion]" of a scheme to defraud, not every act associated with one. 18 U.S.C. § 1031. Count Three alleges that Ms. Hillmer "executed" the alleged scheme on July 27, 2021 by "requesting, obtaining, and receiving" a FedRAMP High P-ATO. Ind. ¶ 49. Yet, even accepting as true every allegation in the Indictment, the conduct alleged on July 27 consisted only of communications relating to a previously submitted authorization request and the receipt of the resulting authorization, and the Indictment identifies no affirmative falsity in them. Because those communications amount to, at most, an act in furtherance of an alleged scheme and not an execution of that scheme, Count Three fails to state an offense.

18 U.S.C. § 1031 provides, in relevant part,

> Whoever ***knowingly executes***, or attempts to execute, ***any scheme or artifice*** with the intent—(1) to defraud the United States; or (2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises, in any grant, contract, subcontract, . . . or in any procurement of property or services as a prime contractor with the United States or as a subcontractor or supplier on a contract in which there is a prime contract with the United States, if the value of such grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, or any constituent part thereof, is $1,000,000 or more shall, subject to the applicability of subsection (c) of this section, be fined not more than $1,000,000, or imprisoned not more than 10 years, or both.

18 U.S.C. § 1031(a) (emphases added). Although Section 1031 does not define the term "execute," Congress modeled the major fraud statute on the bank fraud statute and adopted materially

identical operative language. *See* Major Fraud Act of 1988, Hearings Before the Subcomm. on Crime of the H. Comm. on the Judiciary, 100th Cong. 39 (1987) (noting that Section 1031 "track[s] the language of the bank fraud statute"); *see also* 18 U.S.C. § 1344 (providing that "[w]hoever ***knowingly executes***, or attempts to execute, a ***scheme or artifice***" to defraud certain financial institutions, shall be punished as set forth in the statute) (emphases added). Courts therefore look to bank fraud precedent to determine what constitutes an "execution" under Section 1031. *See, e.g.*, *United States v. Doost*, 3 F.4th 432, 438 (D.C. Cir. 2021); *United States v. Reitmeyer*, 356 F.3d 1313, 1318-21 (10th Cir. 2004); *United States v. Sain*, 141 F.3d 463, 473 (3d Cir. 1998).

Neither the bank fraud statute nor the major fraud statute criminalizes the "scheme" to defraud. Instead, both statutes criminalize only the "execution" of the relevant scheme. *See, e.g., Doost*, 3 F.4th at 438 ("[T]he appropriate unit of prosecution" under the major fraud statute "is an 'execution' of a fraudulent scheme" and "not the scheme itself"); *United States v. Pless*, 79 F.3d 1217, 1220 (D.C. Cir. 1996) ("[T]he unit of prosecution" under the bank fraud statute "is not the scheme but the execution."); *United States v. Bruce*, 89 F.3d 886, 889 (D.C. Cir. 1996) (explaining that "for each count of conviction there must be an execution") (quotation marks and citation omitted). In short, if a defendant "did not execute the scheme," she "would not be guilty." *Pless*, 79 F.3d at 1220.

In turn, not every act connected to a fraudulent scheme constitutes an "execution." The relevant question is whether the charged conduct was itself a discrete fraudulent transaction, rather than a step supporting an earlier transaction or a consequence flowing from it. *See, e.g., Doost,* 3 F.4th at 438 (concluding that the court's "task" in analyzing an alleged violation of Section 1031 "is to distinguish between non-chargeable acts *in furtherance* of the fraud, and chargeable *executions* of the fraud"); *Sain*, 141 F.3d at 473 (in determining whether acts constituted

"executions" under Section 1031, "courts look to whether the actions are substantively and chronologically independent from the overall scheme"); *Bruce*, 89 F.3d at 889 (explaining that "acts in furtherance of the scheme" do not "constitute separate executions of the scheme"); *United States v. Lemons*, 941 F.2d 309, 315, 317-18 (5th Cir. 1991) (rejecting effort to treat intermediate transactions as separate executions under Section 1344 because they were merely components of "one performance, one completion, [and] one execution"); *United States v. Longfellow*, 43 F.3d 318, 323-24 (7th Cir. 1994) (recognizing execution under Section 1344 only where a later transaction independently realizes the scheme's objective by creating a new risk of loss and renewed opportunity for gain).

In distinguishing a chargeable "execution" from conduct merely advancing or resulting from a broader fraudulent scheme under the Major Fraud Act, courts of appeals have applied several related factors. *See, e.g., Doost*, 3 F.4th at 438-39; *Reitmeyer*, 356 F.3d at 1318-21. ***First***, courts consider "whether an identifiable sum of money can be traced to a specific fraudulent transaction." *Doost*, 3 F.4th at 438. If so, "there is likely to be a separate execution of the scheme to defraud." *Id.* (quoting *United States v. Brandon*, 17 F.3d 409, 422 (1st Cir. 1994)). ***Second***, courts look to "whether each charge involved the violation of 'a new and independent obligation to be truthful.'" *Id.* at 439 (quoting *United States v. Molinaro*, 11 F.3d 853, 860 n.16 (9th Cir. 1993)). If each charge identifies a separate claim that "contained lies and misrepresentations," that factor is likely satisfied. *Id.* By contrast, misrepresentations made merely to "increase the likelihood" that the government will approve or pay a previously submitted claim are insufficient. *Reitmeyer*, 356 F.3d at 1325. And ***third***, courts ask whether the conduct "created a 'new and independent' financial risk." *Id.* at 1318 (quoting *United States v. Allender*, 62 F.3d 909, 913 (7th

Cir. 1995)). If the challenged conduct creates a new and independent financial risk, that suggests a separate execution; if the risk merely derives from an earlier submission, it does not. *Id.*[2]

In *Doost*, for example, the defendant submitted a series of drawdown requests seeking payment under a federal contract. 3 F.4th at 438-39. Each request sought a distinct disbursement of funds, required the submission of a new package of invoices and progress reports to obtain payment, and thus carried a new obligation to provide truthful information. *Id.* at 439. Critically, each disbursement request "contained lies and misrepresentations" specific to the payment requested from the government. *Id.* The indictment also described separate disbursement requests seeking separate transfers of government funds. *Id.* The D.C. Circuit therefore held that each drawdown request constituted a separate execution of the scheme. *Id.* The result is consistent with the broader body of Section 1031 precedent. Courts routinely treat as executions the submission of false claims, invoices, applications, or other requests designed to obtain government money or property. *See, e.g., Sain*, 141 F.3d at 468, 473 (false reimbursement claims submitted to the Army under a contract); *United States v. Broderson*, 67 F.3d 452, 454-55 (2d Cir. 1995) (false pricing certifications submitted to NASA in connection with a contract); *United States v. Wiehl*, 904 F. Supp. 81, 83-84 (N.D.N.Y. 1995) (fraudulent invoices submitted to the Army for payment under a contract); *United States v. Verclas*, 2019 WL 95148, at *3 (D. Md. Jan. 3, 2019) (fraudulent grant application submitted to the State Department); *United States v. Wang*, 2025 WL

[2] The court in *Doost* also examined whether the indictment alleged "separate executions" by asking whether it "sufficiently describe[d] two or more separate and distinct offenses." 3 F.4th at 439 (citation modified). Because that inquiry largely turns on the same considerations discussed, and because Ms. Hillmer is only charged with one count of violating the Major Fraud Act, Ms. Hillmer does not address it separately. Under either formulation, Count Three does not allege a separate execution.

50520, at *6 (D. Md. Jan. 8, 2025) (fraudulent research proposal submitted to the NIH to obtain grant funding).

Applying a similar analysis, the Tenth Circuit concluded that there was no separate execution in *Reitmeyer*. 356 F.3d at 1324-25. There, the defendants had already submitted an allegedly fraudulent claim for equitable adjustment, and the challenged conduct consisted of later misrepresentations made during a meeting convened to "support and promote" that previously submitted claim. *Id.* at 1325. Although those misrepresentations allegedly "increase[d] the likelihood" that the government would pay the claim, the court held that the defendants' conduct during the meeting was not a separate execution. *Id.* Because the defendants neither sought a new payment nor created a new and independent financial risk during the meeting, and because any obligation of candor merely "derived from, or was an extension of," the obligation associated with the earlier submission, the court concluded that the meeting was "merely an act in furtherance of the scheme," and thus did not qualify as a chargeable execution. *Id.*

Measured against those considerations, Count Three fails at the threshold. Even accepting every allegation in the Indictment as true, the relevant unit of prosecution under Section 1031 remains the particular "execution" charged in Count Three: that Ms. Hillmer "execute[d] this scheme to defraud" on July 27, 2021, by "requesting, obtaining, and receiving a FedRAMP High P-ATO," that allegedly enabled Company A to obtain or retain a government contract. Ind. ¶ 49. The Indictment identifies only two acts corresponding to that charged execution: Ms. Hillmer (1) sent an email to FedRAMP requesting an update regarding the status of the Platform's FedRAMP High P-ATO request, which had been submitted in 2020; and (2) received a signed authorization letter from FedRAMP granting the P-ATO based on the belief that the Platform's "Security Authorization Package accurately documents and clearly defines the risk considerations" for

federal agency customers. *Id.* ¶¶ 41, 49. Nowhere in the Indictment does the government allege that any statement made by Ms. Hillmer on July 27 was affirmatively false. *See id.* ¶¶ 41, 48-49. The Indictment's allegations instead describe communications relating to an already-pending authorization request, not the sort of stand-alone transaction that gives rise to an "execution" under Section 1031.

***First***, unlike the disbursement requests in *Doost*, neither of Ms. Hillmer's emails sought an identifiable sum of money. *See* 3 F.4th at 438. The Indictment alleges only that Ms. Hillmer requested an update regarding Company A's P-ATO request. Ind. ¶¶ 41, 49. It identifies no payment, disbursement, or other financial benefit sought through either communication. That omission is significant. Executions recognized under Section 1031 consistently involve efforts to obtain distinct government payments or other identifiable financial benefits. *See, e.g., Sain*, 141 F.3d at 468, 473; *Broderson*, 67 F.3d at 454-55; *Wiehl*, 904 F. Supp. at 83-84; *Verclas*, 2019 WL 95148, at *3; *Wang*, 2025 WL 50520, at *6.

***Second***, the July 27 communications did not impose a new and independent obligation to be truthful. According to the Indictment, FedRAMP granted the High P-ATO to Company A based on its belief that the previously submitted status-change application "accurately document[ed] and clearly define[d] the risk considerations." Ind. ¶ 41. Much like the meeting in *Reitmeyer* in which the defendants made representations that "support[ed] and promote[d]" their false claim for equitable adjustment, any obligation of candor on July 27 "derived from, or was an extension of," the obligation associated with the earlier status change request and submissions in support and is thus insufficient to constitute an "execution." *Reitmeyer*, 356 F.3d at 1325. That conclusion is reinforced by the fact that the Indictment does not allege that Ms. Hillmer made a single false statement on July 27 *at all*. In *Doost*, the D.C. Circuit found a separate execution in

part because each charge involved a distinct submission that itself "contained lies and misrepresentations." 3 F.4th at 439. Here, by contrast, the government seeks to premise the "execution" on communications for which it never identifies a false statement or misrepresentation. *See* Ind. ¶¶ 41, 48-49. That theory finds no support in the case law. *See, e.g., Doost,* 3 F.4th at 439 (alleging "misrepresentations" in reports as the "execution"); *Reitmeyer*, 356 F.3d at 1325 (alleging "misrepresentations" at a meeting as the "execution"); *Sain*, 141 F.3d at 470 (alleging "false statements" in claim forms as the "execut[ion]").

***Third***, the July 27 communications created no new and independent financial risk to the government. As alleged, their significance is only that Ms. Hillmer communicated with FedRAMP regarding a previously submitted authorization request and received the status update she requested. *See* Ind. ¶¶ 41, 49. Although the government may contend that those communications furthered the broader scheme, even if true, that does not make them a separate execution of it. In *Reitmeyer*, the defendants met with government officials and made representations intended to "support and promote" a previously submitted claim. 356 F.3d at 1325. Yet those communications did not constitute a separate execution because the resulting financial risk was "not new or independent of the risk" already created when the claim was originally filed. *Id.* The same is true here. Any financial risk alleged in Count Three arose, if at all, from the underlying authorization request and supporting submissions, not from the July 27 communications themselves.

Taken together, these factors confirm a fundamental pleading defect in Count Three. The Indictment identifies Ms. Hillmer's July 27 conduct as the charged "unit of prosecution," *Doost*, 3 F.4th at 438, yet the conduct alleged in the Indictment, even if true, is not an "execution" of a scheme to defraud within the meaning of Section 1031. The alleged July 27 communications and receipt of authorization, even if true, are not the sort of discrete fraudulent transaction that Section

1031 reaches. Because Count Three does not allege a chargeable execution of the alleged scheme, it fails as a matter of law and should be dismissed.

## CONCLUSION

For the foregoing reasons, Ms. Hillmer respectfully requests that the Court grant this Motion to Dismiss and dismiss Count Three of the Indictment.

Dated: October 8, 2026

Respectfully submitted,

*/s/ Charles F. Connolly*

Charles F. Connolly, D.C. Bar No. 455969
Gerald M. Moody, Jr., D.C. Bar No. 90032072
Allison T. Coffin, D.C. Bar No. 1600869
Natalia Heguaburo, D.C. Bar No. 90017877
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4070
cconnolly@akingump.com
gmoody@akingump.com
acoffin@akingump.com
nheguaburo@akingump.com

*Counsel for Danielle Hillmer*

**CERTIFICATE OF SERVICE**

I certify that, on October 8, 2026, a copy of the foregoing document was served upon all counsel of record through the Court's ECF system.

*_/s/ Charles F. Connolly_*
Charles F. Connolly, D.C. Bar No. 455969
Gerald M. Moody, Jr., D.C. Bar No. 90032072
Allison T. Coffin, D.C. Bar No. 1600869
Natalia Heguaburo, D.C. Bar No. 90017877
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4070
cconnolly@akingump.com
gmoody@akingump.com
acoffin@akingump.com
nheguaburo@akingump.com

*Counsel for Danielle Hillmer*