# Exhibit 3

AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| United States of America<br>v.<br>Danielle Hillmer<br>*Defendant* | ) ) ) ) ) | Case No. 1:25-cr-00383-LAA |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE

To: U.S. General Services Administration, Office of the General Counsel and Office of the Inspector General
1800 F St., NW, Washington, D.C. 20405

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

See Attachment A

| Place: | Date and Time: |
|---|---|
| Charles F. Connolly<br>Robert S. Strauss Tower<br>2001 K Street N.W., Washington D.C., 20006 | Production will be 30 days from date of service |

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

*(SEAL)*

Date: ____________

*CLERK OF COURT*

______________________________
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Defendant Danielle Hillmer
______________________________, who requests this subpoena, are:

Charles F. Connolly; Akin Gump Strauss Hauer & Feld LLP, Robert S. Strauss Tower, 2001 K Street N.W., Washington D.C., 20006; cconnolly@akingump.com; 202-887-4070

**Notice to those who use this form to request a subpoena**

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

Case No. 1:25-cr-00383-LAA

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* ______________________
was received by me on *(date)* ______________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________________
______________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ______________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

**(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

**(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

**(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

**(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

**(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:25-cr-00383-LLA** |
| **v.** | : | |
| **DANIELLE HILLMER,** | : | |
| **Defendant.** | : | |

**SUBPOENA ATTACHMENT A**

Pursuant to the accompanying Subpoena to Produce Documents and Rule 17(c) of the Federal Rules of Criminal Procedure, Defendant Danielle Hillmer, through counsel, hereby requests the production of documents responsive to the below requests in accordance with the definitions and instructions set forth herein. All such responsive documents shall be delivered to Akin Gump Strauss Hauer & Feld LLP, Attn: Charles F. Connolly.

**Definitions**

1. "FedRAMP" means the Federal Risk and Authorization Management Program.
2. "JAB" means the Joint Authorization Board, which was a governing body for FedRAMP comprised of representatives from the General Services Administration ("GSA"), the Department of Defense ("DoD"), and the Department of Homeland Security ("DHS").
3. "JAB team" means the personnel assigned by the JAB to review, participate in, process, or be responsible for any aspect of the Assessments, including representatives from the DoD, GSA, and DHS.
4. "Assessment" or "Assessments" means each FedRAMP and/or DoD assessment of the Platform's implementation of security controls conducted, in whole or in part, by Coalfire in its capacity as the third-party assessment organization ("3PAO") for the Platform, the

JAB, and/or the Defense Information Systems Agency ("DISA"), including, without limitation: (a) the assessments of the Platform's implementation of security controls at FedRAMP Moderate, FedRAMP High, and/or DoD Impact Level 5, as well as a New Technology Significant Change Request ("New Tech SCR"), conducted in or around June 2020 through December 2020 (the "2020 Assessment"); (b) the assessment of a Significant Change Request, conducted in or around January 2021 through May 2021; and (c) the assessments of the Platform's implementation of security controls at FedRAMP Moderate, FedRAMP High, and/or DoD Impact Level 4, as well as a Significant Change Request ("SCR2"), conducted in or around July 2021 through September 2021 (the "2021 Assessment"), together with any related readiness assessments, significant change assessments, annual assessments, and continuous monitoring activities concerning the Platform.

5. "Platform" means the cloud-based service offering marketed by Accenture Federal Services ("AFS") as a secure, cloud-based platform that was the subject of the Assessments and referred to in the Indictment in *United States v. Hillmer*, No. 1:25-cr-00383, ECF No. 1 (D.D.C. Dec. 9, 2025) (hereinafter "the Indictment"). The Platform is also referred to in certain materials as the "Accenture Insights Platform" or "AIP," including all versions, components, environments, architecture, and security controls thereof that were tested, assessed, submitted, or represented to assessors or authorizing officials during the relevant period.

6. "Coalfire" means Coalfire Systems, Inc., also known as or doing business as Coalfire Federal Services, the third-party assessment organization ("3PAO") that conducted the Assessments, and includes any of its affiliates, subsidiaries, parents, divisions,

predecessors, successors, and assigns, as well as any of its present or former officers, directors, employees, agents, representatives, contractors, consultants, and all other persons acting or purporting to act on its behalf including subsidiary Veris Group LLC (also known as Coalfire Federal).

7. "FedRAMP High P-ATO" means the Provisional Authorization to Operate for the Platform referenced in Indictment Paragraphs 20, 41, 42, 43, and 49.

8. "Communication(s)" means every manner or method of disclosure, exchange of information, statement, or discussion between or among two or more persons, including but not limited to, face-to-face conversations, telephone calls, video calls, correspondence, memoranda, telegrams, email messages, voice-mail messages, text messages, WhatsApp messages, encrypted messages, video messages, meetings, or discussions.

9. "Document(s)" or "Electronically Stored Information" means any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained directly, or, if necessary, after translation by the responding party into a reasonably usable form.

10. "Relating to," "referring to," "concerning," or "arising from" when referring to any given subject matter, are given the broadest meaning, including any Document or Communication that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, or refers, in whole or in part, directly or indirectly to the particular subject matter identified.

11. "You" or "Your" shall refer to the GSA, including in its capacity as the agency within which the FedRAMP Program Management Office ("PMO") is organized and operated, and in its capacity as a member of the Joint Authorization Board ("JAB"), as well as any of its present

or former officers, directors, employees, agents, representatives, contractors, consultants, and all other persons and entities acting or purporting to act on its behalf.

12. The words "and" as well as "or" shall be construed either conjunctively or disjunctively as necessary to maximize the scope of these Requests and bring within them any information that might otherwise be construed as falling outside the scope of these Requests.
13. Words used in the singular shall be deemed to include the plural, and words used in the plural shall be deemed to include the singular.

**<u>Instructions</u>**

1. In addition to the requirements set forth in the Federal Rules of Criminal Procedure and the Local Rules of the United States District Court for the District of Columbia, which are incorporated herein by reference, the following instructions apply to each Request.
2. Unless otherwise indicated, the Requests cover the period from November 1, 2019 through November 30, 2021.
3. Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes or text messages and similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals. Any document that is maintained in paper form should be scanned with document boundaries and provide the following fields: custodian, source location, and searchable text.
4. Password-protected Documents should be produced with any applicable passwords.
5. All Documents stored or maintained in electronic format should be produced according to the attached Electronically Stored Information ("ESI") Specifications. *See* Appendix A.

6. If a Document once existed and has been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the Document and state the details concerning its loss.
7. If you redact any portion of a Document, please stamp the word "REDACTED" on each portion or portions of the page of the Document that contains redactions.
8. If you redact a Document on a basis other than the attorney-client privilege or work product privilege, please provide the reason for the redaction in sufficient detail to allow us to assess the validity of the claim for redaction.
9. If you withhold or redact a Communication on the basis of the attorney-client privilege or work product privilege, please provide a log that sufficiently describes the Communication that is being withheld or redacted and includes the date of the Communication, the person(s) that sent, received, and were copied on the Communication, the subject matter of the Communication, and the nature of the privilege being asserted.

**Documents to be Produced**

1. Documents sufficient to identify each employee, member of the FedRAMP PMO, or member of the JAB that participated in, or was responsible for any aspect of each Assessment, including each individual's name, title, and the period of his or her participation, and his or her role.
2. [STRIKE]
3. Documents reflecting Coalfire's accreditation status as a 3PAO during the relevant period.
4. All Communications providing, reflecting, or relating to feedback, evaluations, complaints, or commentary on the performance, competence, reliability, independence, any Corrective

Action Plan ("CAP"), or conduct of Coalfire related to its performance of FedRAMP assessments.

5. [STRIKE]
6. [STRIKE]
7. All Communications between You and Taimur Masood or Jean Kang relating to the 2021 Assessments.
8. All Communications between You and Michael Craig exchanged through messaging applications (i.e. WhatsApp, Signal), through text message (SMS, iMessage), or where Michael Craig utilized a government email account (i.e., DoD contractor email account).
9. [STRIKE]
10. [STRIKE]
11. [STRIKE]
12. [STRIKE]
13. [STRIKE]
14. [STRIKE]
15. [STRIKE]
16. [STRIKE]
17. Documents sufficient to show the date on which the decision to grant the FedRAMP High P-ATO was made.
18. Documents sufficient to show the date on which David Shive executed or signed the FedRAMP High P-ATO.
19. [STRIKE]

20. Documents sufficient to show the physical and logical location of the OMB MAX server(s) on which Assessment- or Platform-related materials were stored during the relevant period.
21. [STRIKE]
22. [STRIKE]
23. [STRIKE]

**APPENDIX A**

# Production Specifications

## A. General Specifications

1) All electronically stored information (ESI) will be globally de-duplicated using industry accepted methods.

2) All items will be assigned unique Bates numbers on a page level. Corresponding native and text files will be named according to the first Bates number assigned to that item.

3) All document family groups, e.g., email attachments, embedded files, etc., will be produced together- children files will follow their parent files sequentially in the Bates numbering.

4) Files within container files such as .zip or .rar must be extracted and assigned individual records.

5) Paper is to be scanned to electronic format and produced natively.

6) All ESI and scanned material will be produced as single page images, except for "Complex Documents". "Complex Documents" include spreadsheets, databases, executable programs, and electronic files created in other dynamic data systems. This category also includes any items that cannot be adequately rendered to image, e.g. audio and video files.

7) Parties reserve the right to request native electronic versions of any documents for which a static image is not sufficient to convey its content.

8) All productions should be free of computer viruses or malware.

## B. Image Specifications

1) All ESI must be converted to single page, group IV tiff, or color JPEG format. Color images should be reserved for items in which color is vital for an understanding of the content.

    a) Microsoft Word Documents should be converted to images with all markups and comments displayed.

    b) Microsoft PowerPoint Documents should be converted to images that display comments, hidden slides and speaker's notes.

2) "Complex Documents" shall have a single group IV, single page tiff image "placeholder" provided in place of images. This placeholder should contain verbiage

stating the file is available in native format and shall bear the corresponding Bates number of the file.

3) All paper must be scanned to single page, group IV tiff or color JPEG format.

4) Each single page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF."

5) All single page group IV tiff or color JPEG images, either scanned or converted from native files, should be rendered at 300 DPI.

**C. Extracted/OCR Text Specifications**

1) Extracted text should be provided for all ESI.

2) OCR text will be generated and provided for any native files that do not contain extracted text, such as non-searchable PDF files or faxes received as image files.

3) OCR text will be generated and provided for all paper that has been scanned.

4) OCR text will be generated and provided for any redacted images being produced.

5) Each extracted/OCR text file will be named according to the first Bates number assigned to that document, followed by the ".txt" extension.

**D. Native File Specifications**

1) Native files will be provided for all "Complex Documents", in addition to the placeholder image specified above.

2) Native files will be named according to the unique Bates numbers assigned to it, followed by the extension of the original native file. Example: DEF-000001.XLS.

**E. Time Specifications**

1) All single page group IV tiff or color JPEG images for ESI should be rendered in Coordinated Universal Time (UTC).

2) All extracted or OCR text should be processed in Coordinated Universal Time (UTC).

3) All metadata to be produced should be presented in Coordinated Universal Time (UTC).

**F. Deliverable Specifications**

1) All Data shall be delivered in four top-level folders named as follows, with subfolders containing the files within the folder hierarchy below:

a) "Native" – this folder and its subfolders must contain all native files produced.

b) "Images" – this folder and its subfolders must contain all single page images produced, whether converted from electronic documents or scanned.

c) "Text" – this folder and subfolders must contain all extracted, OCR'd, and redacted text produced.

d) "Data" – this folder must contain all image load and data load files produced.

2) Subfolders must not contain more than 5000 files at the root of any folder, unless it is necessary for a single document containing more than 5000 pages.

**G. Load File Specifications**

1) Metadata load files should include, at a minimum, the fields as outlined below. The first line of every metadata load file should contain the field names.

2) Data Load File Format

a) Concordance DAT, using the standard delimiters:

1. Comma: ¶ (ASCII character 020)

2. Quote: þ (ASCII character 254)

3. Newline: ® (ASCII character 174)

4. Multi-value separator: ; (ASCII character 059)

3) Image Load File Format

a) Concordance OPT file. The Opticon load file is a page level load file, with each line representing one image. Below is a sample:

REL00001,REL01,D:\IMAGES\001\REL00001.TIF,Y,,,3

REL00002,REL01,D:\IMAGES\001\REL00002.TIF,,,,

REL00003,REL01,D:\IMAGES\001\REL00003.TIF,,,,

REL00004,REL01,D:\IMAGES\001\REL00004.TIF,Y,,,2

REL00005,REL01,D:\IMAGES\001\REL00005.TIF,,,,

The fields are, from left to right:

Field One – (REL00001) – the page identifier

Field Two – (REL01) – the volume identifier is not required.

Field Three – (D:\IMAGES\001\REL00001.TIF) – a path to the image to be loaded

Field Four – (Y) – Document marker – a “Y” indicates the start of a unique document.

Field Five – (blank) – can be used to indicate folder

Field Six – (blank) – can be used to indicate box

Field Seven – (3) – often used to storage page count, but unused in Relativity

## Metadata Fields to Be Delivered

| Fields Name | Description |
|---|---|
| BEGBATES | The beginning Bates Number for the item. |
| ENDBATES | The ending Bates Number for the item. |
| BEGATTACH | The beginning Bates Number of the document family to which the parent document and any attachments thereto are associated. For example, for an email that is Bates stamped ABC0001 - ABC0002, with two attachments Bates stamped ABC0003 - ABC0004 and ABC0005 - ABC0008, the BegAttach and EndAttach for all three documents would be ABC0001 - ABC0008. |
| ENDATTACH | The ending Bates Number of the document family to which the parent document and any attachments thereto are associated- see above. |
| CUSTODIANS | Names of all persons from whom the file was obtained. Multiple entities to be separated by a semicolon. |
| RECORDTYPE | Indicates document type, e.g. email, attachment, edoc, embedded file, paper. |
| DATERECEIVED | For all email documents. Date & time email was received.<br>(mm/dd/yyyy hh:mm:ss in “24 hour” notation). |
| DATESENT | For all email documents. Date & time email was sent.<br>(mm/dd/yyyy hh:mm:ss in “24 hour” notation). |
| DATECREATED | For all non-email and non-email documents. Date & time file was created.<br>(mm/dd/yyyy hh:mm:ss in “24 hour” notation). |
| DATESAVED | For all non-email documents. Date & time file was last saved or modified. (mm/dd/yyyy hh:mm:ss in “24 hour” notation). |
| DOCTITLE | For all non-email documents & attachments. Internal title given to native file. |
| CONVERSATIONID | For email, the conversation index value. |
| SUBJECT | For email, the Subject line. |
| TITLE | For email, the Subject line. For non-email and attachments, the internal file title, or if not available, the file name. |
| AUTHORS | For all non-email documents & attachments. Name of person(s) who created or edited the document. |
| FROM | For all email documents. Name of person sending an email. |
| TO | For all email documents. Name(s) of person(s) receiving email.<br>Multiple names to be separated by a semicolon. |
| BCC | For all email documents. Names of persons blind copied on an email.<br>Multiple names to be separated by a semicolon. |
| CC | For all email documents. Names of persons copied on an email.<br>Multiple names to be separated by a semicolon. |
| FILENAME | Name of the original native file as it existed at the time of collection. |

| | |
|---|---|
| FILEEXT | File extension of native file (e.g. DOCX). |
| FOLDER | File paths/folder structures for the original native file as it existed at the time of collection. Multiple items to be separate by a semicolon. When an email/file is duplicated, multiple paths should be accounted for in this field. |
| APPLICATION | Name of most common application used to open native file. E.g. Word, Excel, Acrobat, etc. |
| HASH | Identifying MD5 value of an electronic record – used for deduplication and authentication. |
| IMPORTANCE | For all email documents. "High," or "Low" as indicated in the email. |
| PAGES | The number of pages in a document. |
| REDACTED | Yes or no indication of whether the document at issue is redacted. |
| FILE_PATH | Full relative path to the native file corresponding to the record. |
| TEXT_PATH | Full relative path to the extracted text or OCR file corresponding to the record. |