**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**DANIELLE HILLMER,**<br><br>**Defendant.** | **CRIMINAL NO. 1:25-cr-00383-LLA** |

**United States' Response in Opposition to the Defendant's Motion to Dismiss Count Three of the Indictment**

Count Three of the Indictment properly charges the Defendant with one count of Major Fraud in violation of Title 18, United States Code Sections 1031 and 2(a). The Defendant argues in her Motion to Dismiss Count Three of the Indictment (ECF No. 55; "the "Motion") that the government fails to allege the Defendant executed the scheme. The Defendant, however, is wrong. Paragraph 48 of the Indictment contains the elements of the offense and alleges the Defendant executed or attempted to execute the scheme:

> From at least in or around March 2020, and continuing through at least in or around November 2021, within the District of Columbia, and elsewhere, the defendant, **DANIELLE HILLMER,** *knowingly executed, and attempted to execute*, a scheme and artifice with the intent to defraud the United States . . . .

ECF No. 1 at ¶ 48 (emphasis added); *see* ¶¶ 47-49. Because the Indictment is sufficient, this Court should deny the Defendant's Motion.

The authority the Defendant's Motion relies upon concerns challenges on multiplicity or duplicity grounds to indictments which charged violations of the major fraud statute or the analogous bank fraud statute. But the instant Motion does not fault the Indictment for either of those potential defects; instead, the Defendant relies on these inapposite cases to attempt to find issue with Count Three's charging language. That is, the Defendant appears to argue the acts alleged in the Indictment were not executions of the scheme to defraud. She is seeking to

circumvent a trial and usurp the jury's role by asking the Court to determine now—before the introduction of any evidence or witness testimony—that the government cannot prove the Defendant executed the scheme to defraud the United States.

Count Three of the Indictment specifically alleges that:

> On or about July 27, 2021, in the District of Columbia, and elsewhere, HILLMER *knowingly executed and attempted to execute* this scheme to defraud by requesting, obtaining, and receiving a FedRAMP High P-ATO for Company A and the Platform, which was stored on MAX and reflected on the FedRAMP Marketplace.

(ECF No. 1 at ¶ 49) (emphasis added). The Defendant was obligated to be truthful in requesting and obtaining a provisional authorization to operate ("P-ATO") from the Federal Risk and Authorization Management Program ("FedRAMP") for Company A's secure, cloud-based computing platform (the "Platform"). Moreover, her alleged actions on July 27, 2021, put government agencies at risk of loss because upon the issuance of the P-ATO, agencies could contract for and use the Platform without knowing that it lacked the required security controls. As alleged in the Indictment, the Defendant's execution of the scheme tied to the award of contracts and subcontracts with the United States valued at more than $250 million. (ECF No. 1 at ¶ 43).

The Defendant's Motion fails because Count Three properly alleges the execution of her scheme to defraud on July 27, 2021. Her Motion also is defective because it does not address other of the Defendant's alleged acts leading up to that date, which executed the scheme and which are incorporated by reference into Count Three.

For these reasons, and for the reasons set forth below, the United States respectfully requests the Court to deny the Defendant's Motion.

## ARGUMENT

### I. The Allegations in the Indictment

As alleged in the Indictment, the Defendant engaged in a scheme to fraudulently obtain

contracts and payments from the government to benefit Company A in connection with Company A's sale of the Platform. (ECF No. 1 at ¶ 20). The Defendant sought to realize this scheme in part by making materially false and misleading statements to FedRAMP and its governing body known as the Joint Authorization Board ("JAB") to fraudulently obtain for the Platform a provisional authorization to operate ("P-ATO") at a "High" risk impact level, which required more stringent security controls, mandatory monitoring, reporting, and assessments. (ECF No. 1 at ¶¶ 6, 8, 9, 20.) The P-ATO was a pre-requisite to the award of contracts for the use of the Platform by federal government agencies. It also was required for the Army to sponsor the Platform for provisional authorization ("PA") for a Department of Defense Impact Level 4 ("DoD IL4") which denoted the sensitivity of the data to be hosted. Obtaining a PA at DoD IL4 was necessary for Company A to perform under a contract awarded by the Army to Company A for the delivery of the Nonappropriated Fund Integrated Financial Management System ("NIFMS"), a cloud-based payroll, pension, and benefits system. (ECF No. 1 at ¶¶ 15-16).

The Indictment alleges that the Defendant executed the scheme to defraud the United States on July 27, 2021, first by sending an email to FedRAMP asking when she would receive the letter notifying Company A of the status of the Platform's High P-ATO and have the status updated on the FedRAMP Marketplace website and, second, by forwarding the P-ATO authorization letter she received that same day from FedRAMP to the Army. (ECF No. 1 at ¶¶ 41, 49). Leading up to July 27, 2021, the Indictment alleges that the Defendant took other acts towards securing the Platform's High P-ATO uplift, including signing and submitting Significant Change Requests ("SCRs") to FedRAMP on or about March 10, 2020, and on or about September 28, 2020; approving the submission of a FedRAMP High Readiness Assessment Report ("RAR") via an online portal, the Office of Management and Budget's MAX Information System (MAX), on or

about July 10, 2020; and submitting FedRAMP assessment and authorization materials in and around November and December 2020. (ECF No. 1 at ¶¶ 28, 31, 33, 34).

Obtaining the P-ATO authorization letter and having it reflected on the FedRAMP Marketplace on July 27, 2021, put government agencies at immediate risk of loss because they could then contract for and use the Platform without knowing that it lacked the required security controls. Similarly, forwarding the P-ATO authorization letter to the Army put the Army at immediate risk of loss because it induced the Army to sponsor the Platform for a PA for a DoD IL4, and it purported to show Company A performing under the NIFMS contract when in reality it was not. The Indictment specifically alleges that "From approximately 2020 and 2022, at least six United States departments and agencies, including the Army, used or planned to use the Platform's JAB P-ATO to obtain agency authorizations for cloud products and services provided by Company A, pursuant to contracts and subcontracts with the United States valued at more than $250 million." (ECF No. 1 at ¶ 43).

## II. Legal Standard

When considering a challenge to an indictment for failure to state an offense, "'a district court is limited to reviewing the face of the indictment;' the Court must 'presume the allegations [in the] indictment to be true.'" *United States v. Young-Bey*, No. 21-cr-661-CKK, 2023 U.S. Dist. LEXIS 80265, at *4 (D. D.C. May 8, 2023) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009). "The operative question is whether [those] allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *Id.* (citing *United States v. Sanford Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012)). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future

prosecutions for the same offense." *Id.* at *4-5 (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974) and referencing *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014)).

Importantly, "a pretrial motion to dismiss an indictment allows a district court to review the sufficiency of the government's pleadings, but *it is not a permissible vehicle for addressing the sufficiency of the government's evidence*." *Id.* at *5 (quoting *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 154 (D.D.C. 2015) (emphasis added)). Indeed, arguments concerning the "factual sufficiency of the Government's evidence and whether it will be able to meet its burden of proof" are not "a legally cognizable basis for dismissing an indictment." *United States v. Parker*, 823 F. Supp. 32, 48 (D. D.C. 2026). Dismissal may be granted "only in unusual circumstances since it directly encroaches upon the fundamental role of the grand jury." *Young-Bey*, 2023 U.S. Dist. LEXIS 80265, at *5. (quoting *United States v. Stone*, 394 F. Supp. 3d 1, 13 (D.D.C. 2019)).

## III. Count Three of the Indictment Properly Charges the Defendant with Major Fraud

Count Three of the Indictment alleges that

> From at least in or around March 2020, and continuing through at least in or around November 2021 . . . **DANIELLE HILLMER,** *knowingly executed, and attempted to execute*, a scheme and artifice with the intent to defraud the United States and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in procurements of property and services as a prime contractor on a contract with the United States with a value in excess of $1 million; namely, the NIFMS Contract.

(ECF No. 1 at ¶ 48) (emphasis added). The Indictment then alleges,

> On or about July 27, 2021, in the District of Columbia, and elsewhere, HILLMER *knowingly executed and attempted to execute* this scheme to defraud by requesting, obtaining, and receiving a FedRAMP High P-ATO for Company A and the Platform, which was stored on MAX and reflected on the FedRAMP Marketplace.

(ECF No. 1 at ¶ 49) (emphasis added). The language in these paragraphs tracks the statutory language of the major fraud against the United States statute.[1] Accordingly, Count Three of the Indictment suffices because this allegation—*i.e.,* that Hillmer executed her scheme to defraud the United States on July 27, 2021, by "requesting, obtaining, and receiving a FedRAMP High P-ATO for Company A and the Platform"—if proven along with the other elements of a major fraud offense in violation of 18 U.S.C. § 1031, would permit a jury to find that the crime charged was committed.[2] *See Young-Bey*, 2023 U.S. Dist. LEXIS 80265, at *4. On this basis alone, the Court must deny the Defendant's Motion.

The Defendant nonetheless asserts that Count Three of the Indictment fails to state an offense because a chargeable "execution" need satisfy at least three factors which the Indictment does not allege—that the July 27, 2021, conduct traces to an identifiable sum of money; involved a new and independent obligation to be truthful; and created a new and independent financial risk. ECF No. 55-1 at 7-8. But, putting aside whether the Defendant is correct that the chargeable act must satisfy these particular three factors to be deemed an "execution" of the scheme—the question of whether the Defendant's alleged conduct on July 27, 2021, executed the scheme to defraud goes to the sufficiency of the anticipated *evidence* rather than the sufficiency of the statement of the offense in the Indictment. *See United States v. Wiehl*, 904 F. Supp. 81, 88 (N.D.N.Y. 1995) ("Determining what constitutes an 'execution' depends upon the particular facts of each case. . . . [T]he central question is whether a jury could plausibly find that the actions described in the

---

[1] : "Whoever *knowingly executes, or attempts to execute*, any scheme or artifice with the intent . . . to defraud the United States . . . ." 18 U.S.C. § 1031 (emphasis added).

[2] The Defendant's Motion only addresses the execution element of Count Three of the Indictment, so the government does not address any other elements here.

disputed counts of the indictment, objectively viewed, constituted separate executions" of the scheme.) (cleaned up)).

The two principal cases the Defendant cites to in support of her Motion (*see* ECF No. 55-1 at 6-11)—*United States v. Doost*, 3 F.4th 432 (D.C. Cir. 2021), and *United States v. Reitmeyer*, 356 F.3d 1313, 1315 (10th Cir. 2004)—are inapposite. Those cases addressed whether charges of major fraud had run afoul of the applicable statute of limitations or were multiplicitous, not whether the indictment at issue had failed to properly allege the execution of the scheme. *See, e.g.*, *Doost*, 3 F.4th at 436 (defendant claimed that trial counsel "was ineffective by failing to object to certain counts of the indictment as time-barred, multiplicitous, or both . . . ."); *Reitmeyer*, 356 F.3d at 1315 ("The government appeals the district court's dismissal of its indictment on statute of limitations grounds."). While those cases considered what constitutes an "execution" of the scheme, they did not address the gravamen of the Defendant's argument here—*i.e.*, what *specific* allegations an indictment must make to sufficiently state an offense as to major fraud. The Defendant cites no authority showing that an indictment must specifically allege that the chargeable execution satisfies particular factors to properly state an offense. Nor can she, because that would run contrary to well-settled authority that an indictment is sufficient if it, *inter alia*, contains the elements of the offense charged and fairly informs a defendant of the charge against which she must defend. *See Young-Bey*, 2023 U.S. Dist. LEXIS 80265, at *4-5 (citations omitted).

Count Three of the Indictment properly alleges that the Defendant "knowingly executed and attempted to execute" the scheme on July 27, 2021, by requesting, obtaining, and receiving a FedRAMP High P-ATO for Company A and the Platform. Accepting this allegation as true, as the Court must, means that the Court must conclude for the purposes of Defendant's Motion that she executed her scheme to defraud on that date.

## IV. The Determination of What is an "Execution" of a Scheme to Defraud is Fact-Specific

The Defendant claims that alleged acts must satisfy three specific factors to qualify as the execution of a scheme (distinguishing from acts merely "in furtherance" of the scheme), citing *Doost*, 3 F.4th 432, and *Reitmeyer*, 356 F.3d 1313: the transaction must trace to an identifiable sum of money, involve a new and independent obligation to be truthful, and create a new and independent financial risk. ECF No. 55-1 at 7-8. *Doost* related to the defendant's execution of a scheme to defraud the Overseas Private Investment Corporation (OPIC), and the court considered in that case what constituted an "execution" in the context of the defendant seeking to fraudulently obtain OPIC financing. *Doost*, 3 F.4th at 438-39 ("First, we consider whether an identifiable sum of money can be traced to a specific fraudulent transaction."; "Second, we ask whether each charge involved the violation of "a new and independent obligation to be truthful."; "Third, [because the indictment charged three separate counts of major fraud] we consider the language of the indictment and whether it sufficiently describe two or more separate and distinct offenses."). The court in *Doost* appeared to acknowledge that these factors were not the only ones a court may consider or that they must all be met for an act to qualify as the execution of a scheme. *See id.* at 438 ("Three factors *weigh in favor* of finding . . . .") (emphasis added).

*Reitmeyer* explains more broadly that "whether conduct is an 'execution' of the scheme or merely a component of the scheme will depend on several factors including *the ultimate goal of the scheme, the nature of the scheme, the benefits intended, the interdependence of the acts, and the number of parties involved.*" *Reitmeyer*, 356 F.3d at 1318 (emphasis added) (internal citations omitted). "Other factors the court may consider include whether the conduct created a 'new and independent' financial risk." *Id.* Similar to *Reitmeyer*, in *Wiehl*—a case also cited to by the Defendant in support of her motion (*see* ECF No. 55-1 at 8, 10)—the court found that under the

major fraud statute, each execution of a scheme to defraud the government "encompasses the set of acts that are necessary to complete or fulfill the purpose of a scheme to defraud." 904 F. Supp. at 87-88. In *Wiehl*, the government charged the defendants with 12 separate counts of major fraud for submitting 12 fraudulently inflated invoices to the Army seeking payment under a contract for roller bearings. The question at issue for the court was whether the indictment properly charged 12 separate executions of the major fraud scheme. Ultimately, the court concluded, based on an analysis of a number of factors (*e.g.*, whether the transactions were "integrally related; one could not have succeeded without the other" and whether the scheme "involved more than one transaction, bank or sum of money") that "the invoices submitted by defendants constituted a single execution of a scheme to defraud the government within the meaning of the major fraud statute" and therefore the 12 separate counts charging major fraud were multiplicitous. The court then ordered the government to consolidate the 12 major fraud counts into one count. *Id.* at 88-89, 91; *see also United States v. Colton*, 231 F.3d 890, 910 (4th Cir. 2000) (Evidence that acts are "planned or contemplated together" may indicate that they are dependent on one another and cannot be separately charged.).

Ultimately, these cases—*Doost*, *Reitmeyer*, and *Wiehl*—underscore that the determination of whether a particular act or acts associated with a scheme to defraud constitute the "execution" of said scheme is through the application of a fact-specific analysis that takes into account the purpose of the scheme, the nature of the acts, and the number of parties involved. The government submits that where, as here, an indictment properly alleges that the defendant engaged in and executed a scheme to defraud the United States of money or property in violation of 18 U.S.C. § 1031, the determination as to whether the particular acts alleged in the indictment qualify as the execution of the scheme should be left for trial.

### V. The Indictment Meets the Threshold for Alleging the Defendant Executed her Scheme to Defraud the United States in Violation of 18 U.S.C. § 1031

The Indictment alleges that the goal of the Defendant's scheme was to fraudulently obtain contracts and payments from the government to benefit Company A, and to unlawfully enrich herself through continued compensation in salary and bonuses from Company A. (ECF No. 1 at ¶ 20). The Defendant sought to achieve this goal by making materially false and misleading statements to fraudulently obtain and maintain a FedRAMP High P-ATO; fraudulently induce the Army to award task orders to Company A and sponsor the Platform for a DoD IL4 PA; and conceal the true state of the Platform from assessors, authorizing officials, and government customers. (*Id.*).

As alleged in the Indictment, the Defendant's July 27, 2021, email to FedRAMP indicated that Company A was still waiting for the High P-ATO authorization letter and to have the Platform's P-ATO status updated from Moderate to High on the FedRAMP Marketplace. (ECF No. 1 at ¶ 41). The government will prove at trial that the Defendant was obligated to be truthful in her email to FedRAMP, but she was not because she intentionally did not disclose that the Platform security controls had not been implemented and that it was not compliant with a High risk assessment.

The Indictment further alleges that Defendant's email prompted FedRAMP to issue the High P-ATO authorization letter to Company A that same day upon belief "[the Platform's] Security Authorization Package accurately documents and clearly defines the risk considerations" for federal agency customers. (ECF No. 1 at ¶ 41). The Defendant's subsequent forwarding of the authorization letter to the Army induced the Army to sponsor the Platform for a PA for DoD IL4 and represented to the Army that Company A was performing under the NIFMS contract, when in fact it was not. (ECF No. 1 at ¶ 18, 41).

Importantly, and consistent with the outcome of *Reitmeyer*, 356 F.3d at 1320 (the defendants executed their scheme "when they first placed the government at a risk of financial loss"), the Defendant's July 27, 2021, email to FedRAMP requesting the status of the Platform's High P-ATO and the FedRAMP's subsequent granting of the provisional authorization put government agencies at immediate risk of loss. At trial, the government will prove this fact through witness testimony and documentary evidence. For example, the government will show how Significant Change Requests ("SCRs") submitted by the Defendant to FedRAMP in March and September 2020 requesting an uplift of the Platform to a High P-ATO, expressly stated that the requests were "driven by awarded contracts with the Army, which were contingent on achieving FedRAMP High." Obtaining the P-ATO authorization letter and having it reflected on the FedRAMP Marketplace made the Platform eligible for government agencies to contract for and use it, without knowing that it lacked the required security controls. Similarly, the Defendant's forwarding the P-ATO authorization letter to the Army put the Army at immediate risk of loss because it induced the Army to sponsor the Platform for a PA for a DoD IL4, and it purported to show Company A performing under the NIFMS contract when in reality it was not.

The Indictment further ties the Defendant's execution of the scheme to an "identifiable sum of money," as required by *Doost*, 3 F.4th at 438 (" . . . we consider whether an identifiable sum of money can be traced to a specific fraudulent transaction."). Specifically, the Indictment alleges that "From 2020 and 2022, at least six United States departments and agencies, including the Army, used or planned to use the Platform's JAB P-ATO to obtain agency authorizations for cloud products and services provided by Company A, pursuant to contracts and subcontracts with the United States valued at more than $250 million." (ECF No. Notably, the Defendant completely overlooks this allegation in her Motion. The fact that this allegation is made in the body of the

Indictment, rather than directly in Paragraphs 47-49 (Count Three) is of no moment considering that Count Three expressly incorporates this allegation by reference. (*See* ECF No. 1 at ¶ 47).

At trial, the government will prove the fact that the Defendant's execution of the scheme was traceable to an identifiable sum of money. For example, the government will show that the Defendant's execution of the scheme on July 27, 2021, was required for Company A to perform under the Army's NIFMS contract, and that the NIFMS contract comprised at least a portion of the $250 million in contracts and subcontracts awarded to Company A for the use of its Platform.

Apart from wrongly asserting that Count Three fails to allege the execution of the Defendant's scheme to defraud on July 27, 2021, the Defendant's Motion is defective because it ignores other alleged acts, including the signing and submitting of SCRs to FedRAMP on or about March 10, 2020, and on or about September 28, 2020, approving the submission of a FedRAMP High RAR via MAX on or about July 10, 2020, and submitting FedRAMP assessment and authorization materials in and around November and December 2020. (ECF No. 1 at ¶¶ 28, 31, 33, 34). Even should the Court agree with the Defendant's characterizations of the sufficiency of the Indictment with respect to allegations of the Defendant's conduct on or about July 27, 2021, the incorporation of these other acts into Count Three satisfies the threshold for alleging the execution of a scheme and compels the denial of the Motion.

These acts are part of the *single* execution of the Defendant's scheme to defraud. *See Wiehl*, 904 F. Supp. At 88-89, 91. These acts all relate to one event, the award of a FedRAMP High P-ATO. They are integrally related to one another, because one could not have succeeded without the other. Put another way, the Defendant's submission of the first SCR in March 2020 led to the submission of the RAR in July 2020, which led to her submission of another SCR in September 2020, to her submission of other assessment and authorization materials in November and

December 2020 and, ultimately, to her emailing FedRAMP in July 2021 requesting the status of the Platform's High P-ATO. While each submission required the Defendant to be truthful, they ultimately had a sole objective, to fraudulently secure a FedRAMP High P-ATO. Together, these submissions led to government agencies, including the Army, using or planning to use the Platform to obtain agency authorizations for cloud products and services provided by Company A, pursuant to contracts and subcontracts with the United States valued at more than $250 million.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court to deny the Defendant's Motion to Dismiss Count Three of the Indictment.

Respectfully submitted,

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
United States Department of Justice

By: */s/ Ariel Glasner*
ARIEL GLASNER
AMANDA FRETTO LINGWOOD
Trial Attorneys
National Fraud Enforcement Division
United States Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20530
Amanda.Fretto.Lingwood@usdoj.gov

**Certificate of Service**

I hereby certify that I will cause the foregoing response to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ Ariel Glasner*
ARIEL GLASNER
Trial Attorney
National Fraud Enforcement Division
United States Department of Justice