**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 1:25-cr-00383-LLA** |
| | : | |
| **DANIELLE HILLMER** | : | |

**REPLY IN SUPPORT OF DANIELLE HILLMER'S**
**MOTION TO DISMISS**
**COUNT THREE OF THE INDICTMENT**

Danielle Hillmer, by and through undersigned counsel, respectfully submits this reply in support of her Motion to Dismiss Count Three of the Indictment (ECF No. 55, "Motion" or "Mot.") pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), and in response to the government's Response in Opposition to the Defendant's Motion to Dismiss Count Three of the Indictment (ECF No. 61, "Opposition" or "Opp.").

## PRELIMINARY STATEMENT

The major fraud statute criminalizes only the "execut[ion]" of a fraudulent scheme. 18 U.S.C. § 1031(a). Thus, even taking the Indictment's factual allegations as true, the question is whether the conduct it charges as the execution is legally sufficient. The government cannot evade that question by pointing to the Indictment's use of the statutory term or by insisting that any inquiry into the legal sufficiency of the charged conduct must await trial. At this stage, the Court must accept the Indictment's factual allegations as true, but not its legal characterizations. Nor can the government salvage Count Three by relying on features of the broader alleged scheme rather than the conduct the Indictment charges as the execution. That conduct—Ms. Hillmer's alleged "requesting, obtaining, and receiving" a FedRAMP High P-ATO" on July 27, 2021—sought no

identifiable sum of money, gave rise to no new obligation to be truthful, and created no new and independent financial risk. Count Three should be dismissed.

## ARGUMENT

### I. WHETHER THE JULY 27 CONDUCT CONSTITUTES AN "EXECUTION" IS A QUESTION OF LEGAL SUFFICIENCY PROPERLY RESOLVED ON A MOTION TO DISMISS

Count Three can and should be dismissed now. The conduct it identifies as the "execution" of the scheme—that, on July 27, 2021, Ms. Hillmer "request[ed], obtain[ed], and receiv[ed] a FedRAMP High P-ATO," Ind. ¶ 49—does not satisfy the statutory meaning of "execut[ion]." 18 U.S.C. § 1031(a). Whether that conduct, taken as true, is an "execut[ion]" under 18 U.S.C. § 1031(a) turns on what the statute means. Section 1031 criminalizes the execution of a fraudulent scheme, "not the scheme itself," making an "execution" the statute's "unit of prosecution" and requiring courts to distinguish "non-chargeable acts in furtherance of the fraud" from "chargeable executions of the fraud." *United States v. Doost*, 3 F.4th 432, 438 (D.C. Cir. 2021). Ms. Hillmer's challenge therefore presents a textbook question of legal sufficiency properly resolved on a motion to dismiss: whether the conduct charged, "if proven, would be sufficient to permit a jury to find that the crime[] charged w[as] committed." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (citation omitted).

The government disagrees. Before addressing the merits, it offers three threshold reasons the Court should not reach the legal sufficiency of the charged conduct. None precludes review.

**A.** The government first argues that Count Three is sufficient because it "tracks the statutory language" of Section 1031. Opp. 6. That argument misses the point. Ms. Hillmer does not dispute that Count Three recites the statutory term "execute"; she contends that the conduct the Indictment charges as the "execution" is legally insufficient under Section 1031. *See* Mot. 4-

12. Where application of a statutory element "depends so crucially upon . . . a specific identification of fact," an indictment "must do more than simply repeat the language of the criminal statute." *United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)); *see United States v. Hillie*, 227 F. Supp. 3d 57, 73 (D.D.C. 2017) (same). Because the "execution" of the scheme is the "unit of prosecution" under Section 1031, whether the Indictment adequately alleges that element necessarily turns on the specific conduct it identifies as the execution. *Doost*, 3 F.4th at 438.

**B.** The government next argues that, because the Indictment alleges facts to support that Ms. Hillmer "executed" the scheme, the Court must deny the Motion. Opp. 6 (citing *United States v. Young-Bey*, 2023 U.S. Dist. LEXIS 80265, at *4 (D.D.C. May 8, 2023)). But *Young-Bey* itself recognized that accepting an indictment's factual allegations as true does not end the inquiry; a court must still determine whether those allegations, "if proven, would be sufficient to permit a jury to find that the crimes charged were committed." 2023 U.S. Dist. LEXIS 80265, at *4. The D.C. Circuit has likewise expressly recognized that a defendant may challenge an indictment for failure to state an offense "when the statute under which he is charged does not apply to his alleged conduct." *United States v. Riley*, 115 F.4th 604, 611-12 (D.C. Cir. 2024); *see also United States v. Brewbaker*, 87 F.4th 563, 579 (4th Cir. 2023) (courts need not accept "a legal conclusion couched as a factual allegation") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). That is precisely Ms. Hillmer's challenge.

**C.** The government also argues that the question whether the charged conduct constitutes an "execution" is too "fact-specific" to resolve on a motion to dismiss and "should be left for trial." Opp. 8-9. But the fact-dependent nature of the execution inquiry does not make it a jury question. Courts routinely decide whether an indictment is legally sufficient by asking

whether the facts it alleges, taken as true, would establish the charged offense. *See, e.g.*, *United States v. Payne*, 382 F. Supp. 3d 71, 73-74, 77 (D.D.C. 2019) (accepting the indictment's factual allegations as true but dismissing because those facts could not establish the charged offense as a matter of law); *United States v. Guertin*, 581 F. Supp. 3d 90, 97 (D.D.C. 2022) (same). Taken as true, the Indictment's allegations here do not describe an "execution" of a scheme to defraud under Section 1031, and thus Count Three should be dismissed.

The government's cases do not support its contention that the execution inquiry must await trial. *See* Opp. 8-9 (citing *Doost*, 3 F.4th at 432; *United States v. Reitmeyer*, 356 F.3d 1313 (10th Cir. 2004); *United States v. Wiehl*, 904 F. Supp. 81 (N.D.N.Y. 1995)). To the contrary, both *Doost* and *Wiehl* tested the indictments' allegations against Section 1031's statutory requirements. In *Doost*, the D.C. Circuit considered what "the indictment identifies" and "the language of the indictment" to decide whether the charged transactions constituted multiple executions. 3 F.4th at 438-39. And in *Wiehl*, although the court recognized that "[d]etermining what constitutes an 'execution' depends upon the particular facts of each case," it resolved that question on a pretrial motion by examining the indictment's allegations. 904 F. Supp. at 88-91.

The Tenth Circuit's decision in *Reitmeyer* is even more directly on point. There, the court considered a statute-of-limitations question that turned on whether conduct alleged in the indictment constituted an execution of the fraudulent scheme. 356 F.3d at 1317-19, 1325. The government urged the court to "leave [for the jury] certain factual questions" concerning whether particular acts qualified as executions, but the Tenth Circuit refused, explaining that the indictment must be tested "solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id.* at 1319 n.5 (citation omitted). Contrary to the government's claim that the

execution inquiry must await trial, *Wiehl* and *Reitmeyer* addressed that inquiry on the face of the indictment, which is precisely what Ms. Hillmer asks the Court to do here.

In short, none of the government's procedural arguments prevents the Court from deciding now the dispositive question Count Three presents: whether the conduct charged, taken as alleged, is an "execution" under Section 1031. As explained below, it does not.

## II. THE JULY 27 CONDUCT CHARGED IN COUNT THREE IS NOT AN "EXECUTION" UNDER SECTION 1031

Count Three fails on the face of the Indictment. The July 27, 2021 conduct the Indictment identifies as the "execution" bears none of the hallmarks of a chargeable execution under Section 1031. *See Doost*, 3 F.4th at 438-39; *Reitmeyer*, 356 F.3d at 1324-25. The Indictment alleges only two acts on July 27, 2021 to support the charged execution of "requesting, obtaining, and receiving" the FedRAMP High P-ATO: Ms. Hillmer (1) sent an email to FedRAMP "requesting" an update on Company A's pending P-ATO request; and (2) "obtain[ed] and receiv[ed]" a signed authorization letter from FedRAMP granting the P-ATO. Ind. ¶¶ 41, 49.[1] But even if these allegations are true, the Indictment does not allege that Ms. Hillmer's email (i) sought an identifiable sum of money (because it requested only the status of a previously submitted authorization request); (ii) imposed a new and independent obligation to be truthful (because any obligation of candor derived from the prior authorization request on which the status change was based); or (iii) created an independent financial risk to the government (separate from the risk that arose as a result of the previous submission of the authorization request). *See* Mot. 1-12. Nor does

[1] To the extent the government relies on Ms. Hillmer's forwarding the authorization to the Army on July 27, 2021, that argument fails for two independent reasons. First, the Indictment does not charge the forwarding as the "execution"; it charges only the "requesting, obtaining, and receiving" of a FedRAMP High P-ATO. *See* Ind. ¶ 49. Second, even if considered, forwarding an authorization already obtained through an earlier allegedly fraudulent request merely furthered the alleged scheme, it did not execute it. *See Reitmeyer*, 356 F.3d at 1325.

the alleged receipt of FedRAMP's signed authorization letter supply the missing execution. Receiving a decision on a previously submitted request was not a new act by Ms. Hillmer; it was the product of an earlier request. Those allegations therefore describe, at most, conduct in furtherance of the alleged scheme, not the "execution" Section 1031 reaches.

The government tries to cabin *Doost* and *Reitmeyer* by emphasizing that *Doost* arose from a multiplicity challenge and *Reitmeyer* from a statute-of-limitations challenge. Opp. 7. But those procedural distinctions do not limit the cases' construction of "execution." The D.C. Circuit in *Doost* could not determine whether the indictment charged multiple offenses without first determining what Congress made the "unit of prosecution." 3 F.4th at 438. Likewise, the Tenth Circuit in *Reitmeyer* could not decide when the limitations began to run without first determining "what constitutes an offense under the Act." 356 F.3d at 1317-18. The government therefore cannot avoid the framework those cases establish for determining whether conduct qualifies as an "execution" under the major fraud statute.

The government's efforts to show that the July 27, 2021 conduct satisfies the execution framework fare no better. ***First***, the government asserts that, "consistent with the outcome of *Reitmeyer*," Ms. Hillmer's July 27 conduct "put government agencies at immediate risk of loss" because the P-ATO enabled agencies to contract for and use the Platform. Opp. 4, 11. But *Reitmeyer* rejected that very theory. There, the government argued that the defendants' representations at meetings following the submission of their fraudulent claim constituted an execution because they "significantly increased the risk that the claim would be paid." 356 F.3d at 1325. The Tenth Circuit disagreed. Although the later representations may have increased the likelihood of payment, they created no "new or independent" risk because the financial risk arose from the previously submitted claim; instead, the scheme was executed when defendants "***first***

placed the government at a risk of financial loss." *Id.* at 1320, 1325 (emphasis added). The same reasoning controls here. Whatever risk the government attributes to the July 27 communication already inhered in the pending authorization request and its supporting materials, just as the risk in *Reitmeyer* inhered in the previously submitted claim. The government's own opposition concedes this point. It states that its proof of execution at trial will include submissions made to the government in March and September 2020—more than ten months before the major fraud scheme was allegedly executed—and characterizes the July 27, 2021 conduct as "prompt[ing]" the government with respect to the prior P-ATO submission. Opp. 10.

***Second***, the government claims that the Indictment merely "ties the [] execution of the scheme to an 'identifiable sum of money.'" Opp. 11. But the government seeks to prove that theory by arguing how acts ***other than*** the July 27, 2021 alleged execution are tied to identifiable sums of money, pointing to the Indictment's allegation that "From 2020 to 2022, at least six United States departments and agencies, including the Army, used or planned to use the Platform's JAB P-ATO to obtain agency authorizations for cloud products and services provided by Company A, pursuant to contracts and subcontracts with the United States valued at more than $250 million." Opp. 11-12 (quoting Ind. ¶ 43).

Importantly, *Doost* asks whether an identifiable sum of money can be traced to the particular conduct alleged as the execution, not whether the charged conduct can somehow be connected to the aggregate value of contracts associated with the broader scheme. 3 F.4th at 438 (finding this factor satisfied where each alleged execution sought a specific, identifiable disbursement). The indictments in *Doost* and *Reitmeyer*, unlike the Indictment in this case, reflect that distinction. In *Doost* each charged execution was tied to a discrete request for government funds, and the indictment identified the amount sought through each transaction: $7 million, $7

million, and $1.8 million. *See* Ind. ¶ 5 at 9, *United States v. Doost*, No. 1:17-cr-00109 (D.D.C. June 7, 2017), ECF No. 1. In *Reitmeyer*, the alleged execution that ultimately formed the basis of the major fraud charge was the submission of a certified claim seeking $8,207,522, including $3,905,847 in allegedly fraudulent cost overruns. *See* Ind. ¶ 33, *United States v. Reitmeyer*, No. 4:02-cr-00032 (N.D. Okla. Mar. 14, 2002), ECF No. 8. In both cases, the charged execution sought a specific amount of government money. Here, by contrast, the Indictment does not allege that Ms. Hillmer sought or requested any money through her July 27 communication. The transaction-specific nexus that *Doost* found significant is therefore absent here. *See* 3 F.4th at 438-39.

***Third***, the government argues that Ms. Hillmer was "obligated to be truthful" in her July 27 email and should have disclosed additional facts. Opp. 2, 10. But even accepting that theory, the government identifies no new obligation arising from the July 27 conduct. To the contrary, the Indictment alleges that Company A received the FedRAMP High P-ATO authorization based on the accuracy of the security representations previously submitted to FedRAMP in support of Company A's status-change request. *See* Ind. ¶ 41 (government granting the Platform a FedRAMP High P-ATO upon belief that "[the Platform's] ***Security Authorization Package*** accurately documents and clearly defines the risk considerations" for federal agency customers) (emphasis added). Any duty to correct those representations thus "derived from, or was an extension of," the obligation associated with the earlier submissions, rendering the July 27 conduct precisely the sort of derivative obligation *Reitmeyer* held insufficient to establish a separate execution. 356 F.3d at 1325.

***Finally***, the government's fallback "single execution" theory is inconsistent with the relevant law. The government argues that Ms. Hillmer's 2020 submissions and July 27 conduct collectively constituted a "single execution" because they were "integrally related" and "one could

not have succeeded without the other." Opp. 12-13 (citing *Wiehl*, 904 F. Supp. at 88-89, 91). This argument ignores that a scheme is executed when the defendant ***first*** places the government at a risk of financial loss. *See, e.g.*, *Reitmeyer*, 356 F.3d at 1320, 1325; *United States v. Sain*, 141 F.3d 468, 473 (3d Cir. 1998) (false reimbursement claims submitted to the Army under a contract each qualified as an "execution"). It also misreads *Wiehl*. There, the court considered whether twelve invoice submissions were properly charged as separate executions instead of a single execution. 904 F. Supp. at 88-91. In that context, interrelatedness answered how many executions occurred, not whether any execution occurred at all. The court used interrelatedness to define the boundaries of an execution; it did not convert mere acts in furtherance of a scheme into an execution. Indeed, the court in *Wiehl* emphasized that Section 1031 punishes executions, "not individual acts in furtherance of each execution." *Id.* at 88. Under *Wiehl*, then, even if Ms. Hillmer's 2020 submissions and July 27 conduct were "integrally related," that would establish only that they advanced the same alleged scheme. *See Doost*, 3 F.4th at 438 (underscoring the difference between "non-chargeable acts in furtherance of the fraud" and "chargeable executions"); *Reitmeyer*, 356 F.3d at 1325 (concluding conduct that "support[ed] and promot[ed]" an existing fraudulent scheme was not an execution). Interrelatedness may tell the Court where one execution ends and another begins; it cannot supply an execution where none exists.

## CONCLUSION

For the foregoing reasons, Ms. Hillmer respectfully requests that the Court grant her Motion and dismiss Count Three of the Indictment.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Charles F. Connolly*
Charles F. Connolly, D.C. Bar No. 455969

Gerald M. Moody, Jr., D.C. Bar No. 90032072
Allison T. Coffin, D.C. Bar No. 1600869
Natalia Heguaburo, D.C. Bar No. 90017877
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4070
cconnolly@akingump.com
gmoody@akingump.com
acoffin@akingump.com
nheguaburo@akingump.com

*Counsel for Danielle Hillmer*

**CERTIFICATE OF SERVICE**

I certify that, on October 29, 2026, a copy of the foregoing document was served upon all counsel of record through the Court's ECF system.

*/s/ Charles F. Connolly*

Charles F. Connolly, D.C. Bar No. 455969
Gerald M. Moody, Jr., D.C. Bar No. 90032072
Allison T. Coffin, D.C. Bar No. 1600869
Natalia Heguaburo, D.C. Bar No. 90017877
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4070
cconnolly@akingump.com
gmoody@akingump.com
acoffin@akingump.com
nheguaburo@akingump.com

*Counsel for Danielle Hillmer*